DODGE v. VAN BUREN CIRCUIT JUDGE.

118  189<br>120  561

1. TAXATION—RAILROAD-AID BONDS—CONSTITUTIONAL LAW.
   The legislature cannot confer upon a township the right to issue bonds in aid of railroad companies. *People* v. *Township Board of Salem*, 20 Mich. 452, followed.

118  189<br>124  682<br>118  189<br>s76ᴺᵂ 315<br>132  ³518

2. SAME—EQUITY JURISDICTION—INJUNCTION.
   Injunction will lie to restrain a township from negotiating railroad-aid bonds, on behalf of any taxpayer of the township whose interest is sufficient to permit him to invoke the aid of equity. *Curtenius* v. *Railroad Co.*, 37 Mich. 583, followed.

118  189<br>f148 ¹ 76<br>f148 ¹ 99

3. SAME—INTEREST OF PETITIONER.
   In such case the petitioner's interest is to be determined with reference, not to the amount of the tax for which he would be made liable because of the bonds, but to the value of his property subject to such taxation. *Fuller* v. *City of Grand Rapids*, 40 Mich. 395, followed.

4. MANDAMUS TO CIRCUIT COURT—INJUNCTION—STARE DECISIS.
   *Mandamus* will lie to compel a circuit judge to grant an injunc-

tion, where it is apparent from his return that his refusal of the writ was based solely upon his opinion that previous decisions of the Supreme Court, which, if followed, would make it clearly his duty to issue the writ, were erroneously decided.

*Mandamus* by Thomas F. Dodge to compel George M. Buck, circuit judge of Van Buren county, to grant an injunction restraining the negotiation of certain township bonds. Submitted June 28, 1898. Writ granted September 20, 1898.

*Howard, Roos & Howard*, for relator.

*Sam H. Kelley* and *Thomas J. Cavanaugh*, for respondent.

MOORE, J. This is an application for a writ of *mandamus* to compel the circuit judge to issue a preliminary injunction. The petition shows that in April, 1898, the relator, as complainant, filed a bill in chancery against the township board of the township of Paw Paw and the South Haven & Eastern Railroad Company, in which bill it was stated that complainant was the owner of property in said township, of the value of $2,000, which was liable to the assessment of taxes; that the electors of said township had illegally voted and executed $10,000 in the bonds of said township, which had been placed in the hands of persons unknown to complainant, in trust or escrow for the defendant railroad company, to be delivered to it when it had made certain changes and improvements to its railroad property, by making it a standard-gauge road from the village of Lawton, through Paw Paw, to the village of Hartford, and erecting a freight station at or near Lake Cora, and making other improvements; that the money to liquidate said bonds must be raised by taxation; that said bonds are illegal, and will be negotiated unless an injunction is issued,— and prayed for an injunction. A temporary restraining order was issued. A time was set for a hearing of the application for an injunction. The defendants severally answered. Their answers are

not frank, clear, and definite, but it is claimed in them that the bonds were legally issued, under the provisions of Act No. 438, Local Acts 1895. It is also claimed that the bonds have already been negotiated, but the language used is very peculiar, and there is no statement when and to whom they were negotiated. A hearing was held, at which the court evidently was not impressed with the statement that the bonds had been negotiated, or had been issued for other purpose than to aid in making improvements to the railroad property. This is indicated by the language of the court in the disposition of the motion:

"The court is strongly of the opinion that, if the bonds which are the subject of this controversy are invalid, then the complainant is entitled to the temporary injunction asked for in this motion. This view renders it necessary to examine the question of the validity of the bonds, upon the assumption that they were issued as a bonus to the South Haven & Eastern Railroad Company, in consideration of the making of certain changes and improvements in the road and railroad property of the company. * * * There can be no question but that, according to the decisions of the Supreme Court of Michigan in the cases of *People* v. *Township Board of Salem,* 20 Mich. 452 (4 Am. Rep. 400), and *People* v. *State Treasurer,* 23 Mich. 499, a municipal corporation of this State has no authority to issue its bonds in aid of a private corporation building, or proposing to build, a railroad to be owned and controlled by the corporators, and that the legislature cannot, under the Constitution, authorize the issue of such bonds, either with or without a vote of the electors of the municipal corporation issuing them."

The judge then reviews the cases, and claims the views of this court as expressed in its opinions are not in harmony with the decisions of many of the State courts, or with the courts of the United States, and then proceeds:

"The decision in the case of *People* v. *Township Board of Salem* rests on the assumption that 'a corporation created for the purpose of constructing a railway to be owned and operated by the corporators is a private corporation, and that the road when constructed will not be a public highway, except in a very qualified sense, as it

accommodates the travel and traffic of the public, and is therefore no more a public object than any other private enterprise which also supplies a public want or furnishes to the public a convenience.' To this proposition my reason refuses assent."

The judge then argues that railroads are not private corporations, and proceeds:

"It might be suggested in behalf of the complainant that, inasmuch as the decisions of the Supreme Court of Michigan have been to the effect that municipal corporations in this State have no constitutional right to issue bonds in aid of the construction of railways, this court ought to follow those decisions. But the experience of this court has not been such as to encourage the adoption of this suggestion."

The judge then reviews some cases heard by him, appealed to the Supreme Court, in which the court did not agree with the circuit judge as to the effect of its earlier decisions, and then proceeds:

"The doctrine of *stare decisis* is a salutary one, when applied within proper limits. But a decision which is radically wrong in principle ought not to be followed, no matter how long it may have been acquiesced in or how many times it may have been followed. * * * In this State the authority for holding that municipal corporations have no constitutional right to vote aid to railroad companies in the construction of railways is found in the case of *People* v. *Township Board of Salem.* Believing, as I do, that the doctrine of that case is radically wrong, and has been overthrown by the decisions of the Supreme Court of the United States, I must decline to follow it. The motion for an injunction should be denied."

In the answer filed in this proceeding by the circuit judge, he says he was so firmly convinced of the correctness of the views expressed by him in his opinion, of the constitutionality of the act in relation to the issuing of the bonds, that he did not deem it necessary to consider the other questions in the case. It may be necessary to consider them briefly here.

First, it is said complainant has an adequate remedy at

law.   This suggestion is met by the case of *Curtenius* v.
*Railroad Co.*, 37 Mich. 583, where it is held that a bill
like the one filed in this case can be filed under the cir-
cumstances shown by this case.

It is said that, as it is not shown the taxes of complain-
ant would amount to $100, he cannot maintain this bill.
The allegation is that the property subject to taxation,
and which might be sold for the tax if it was unpaid, is of
the value of $2,000.   The case is governed by *Fuller* v.
*City of Grand Rapids*, 40 Mich. 395.

It is urged that Act No. 438 of the Local Acts of 1895,
under which these bonds were issued, is constitutional.
If that act is to be interpreted as authorizing the issuing of
bonds in aid of railroad enterprises, and if that was the
purpose of procuring its enactment, it is a scheme evasive
in character, in which the attempt is made to defeat the
plain provisions of the Constitution, as interpreted by the
courts.   *Common Council of Cedar Springs* v. *Schlich*,
81 Mich. 405 ( 8  L. R. A. 851).   Whether legislation of
this character is constitutional or not is no longer an open
question in the courts of this State.   Prior to 1870 the dis-
position on the part of townships, cities, and villages of
this State to vote municipal aid to railroads and other cor-
porations was so widespread that had it not been for the
wise provisions of the Constitution, as interpreted by the
courts, these municipalities in many instances would have
so incumbered themselves with debt, in aid of enterprises
which were not needed, as to be a serious menace to their
prosperity.   Many aid bonds had been issued, and others
were to be issued.   The question was raised in the case of
*People* v. *Township Board of Salem*, 20 Mich. 452 ( 4
Am. Rep. 400 ).   Because of the magnitude of the inter-
ests involved, the case excited widespread attention.   The
parties in interest were represented by as able counsel as
ever appeared in any one case before any court in this
State.   The case was given patient and careful considera-
tion by the court, whose membership then, in point of

118 MICH.—13.

ability, was not excelled by any State court. The opinion was written by one of the ablest jurists this or any other country has ever known. Justice COOLEY was then at the height of his great powers. In an elaborate and well-considered opinion, in which all the questions involved were ably discussed, it was held that legislation of this character was unconstitutional. A year later the question was again raised, in *People* v. *State Treasurer*, 23 Mich. 499. The learned justice who wrote the opinion in *People* v. *Township Board of Salem, supra*, wrote the opinion in this case, and, referring to the prior case, said:

"Our conclusion, therefore, was that the legislature could neither compel the taxation of municipalities in aid of railroad companies, nor could it empower them, in order to give such aid, to tax themselves, or to contract indebtedness which must be paid by taxation. * * * The conclusion reached by the majority of the court was one which struck at the root of all the legislation of which the act in question was an instance. We found no warrant for it in the Constitution. On the contrary, we found that it assumed to take from the citizen his property under a pretense of taxation, but in a case and for a purpose not admitting of an exercise of that power. Our Constitution has carefully provided a shield against an invasion of the citizen's right to his property, in the provision which guarantees to every person due process of law. Article 6, § 32. To take a man's property from him under pretense of taxation, for a purpose for which taxation is not admissible, is not due process of law, but is an unlawful confiscation."

Justice GRAVES, who wrote a dissenting opinion in the *Salem Case*, concurred in this.

The question again arose in 1873, in the case of *Thomas* v. *City of Port Huron*, 27 Mich. 320, where Justice COOLEY wrote the opinion, in which the doctrine of the two other cases was reaffirmed.

The townships and municipalities ceased to vote aid to corporations. The people indicated no desire to change the Constitution so that this might be done. For a quarter of a century the doctrine announced in the case of

*People* v. *Township Board of Salem* has been regarded as the settled law of this State, and, so far as we know, has gone unchallenged in any of the courts of this State until a different rule was announced in this case.   Section 3, art. 6, of the Constitution of this State, provides:

"The Supreme Court shall have a general superintending control over all inferior courts, and shall have power to issue writs of error, *habeas corpus, mandamus, quo warranto, procedendo,* and other original and remedial writs, and to hear and determine the same.   In all other cases it shall have appellate jurisdiction only."

Our attention has not been called to any constitutional provision authorizing the judge of a circuit court, however learned and able he may be, to overrule the decisions of the Supreme Court.   So, the doctrine of *People* v. *Township Board of Salem* must still be regarded as the law in all of the courts of the State.

It is urged the granting or refusing a writ of injunction calls for the exercise of his discretion upon the part of the judge, and will not be reviewed by *mandamus;* counsel citing 1 High, Inj. (3d Ed.) § 15, *Reddall* v. *Bryan,* 14 Md. 444 (74 Am. Dec. 550), and *Lansing Lumber Co.* v. *Ingham Circuit Judge,* 108 Mich. 305.   It is true that courts hesitate to review the action of a trial judge involving matters of discretion, and will not do so unless it is necessary that justice may be done.   In the note to section 15, 1 High, Inj., it is said: "This discretion, however, is by no means an arbitrary one, and is to be exercised in accordance with established principles of law and equity."   In the case of *Lansing Lumber Co.* v. *Ingham Circuit Judge, supra,* the writ of *mandamus* was issued.   In *Tawas, etc., R. Co.* v. *Iosco Circuit Judge,* 44 Mich. 479, a writ of *mandamus* was issued to set aside an injunction; the court holding it was a prerogative writ, designed to afford a summary and specific remedy, where the party applying for it would otherwise be subjected to serious injustice.   In this case the circuit judge said, if the decisions of this court are to control, the relator was

entitled to the writ of injunction. It is not a case where, in refusing the writ of injunction, the judge exercised his discretion in accordance with established principles of law and equity, but it is a case where he substituted his judgment of what the law ought to be for the law itself, as determined by the repeated rulings of this court.

The writ of *mandamus* will issue as prayed.

The other Justices concurred.