## McMANUS v. CITY OF PETOSKEY.

1. INJUNCTION — MUNICIPAL CORPORATIONS — MISUSE OF FUNDS — JURISDICTION OF EQUITY.

A taxpayer may, by bill in equity, restrain a threatened misuse of city funds in two classes of cases; where his interest in the fund or threatened damage to his property interests by its misuse amounts to $100; where he has land worth $100 which is threatened with sale, or liable to a lien for a tax, in consequence of the proposed misuse. 1 Comp. Laws, § 435.

2. SAME—AMOUNT IN CONTROVERSY.

The fact that the municipality intends to use money on hand improperly, so that taxation must be increased by a corresponding amount, is sufficient to confer jurisdiction, if the amount in controversy is within the jurisdiction of chancery.

3. APPEAL AND ERROR—DEMURRER—REVIEW.

After the overruling of a demurrer to the sufficiency of a bill of complaint, and the filing of an answer to the bill, the pleading is not open to objection on appeal.

4. EQUITY—PLEADING—CROSS-BILL—RELIEF.

Defendant who has not filed a cross-bill or asked affirmative relief in its answer is, at most, entitled to the dismissal of the bill.

5. MUNICIPAL CORPORATIONS — PRIVATE ENTERPRISE — CONTRACTS —VALIDITY.

Under provisions of a lease by a city to a manufacturing corporation providing for the payment to the company of a sum of money, deposited in escrow, on the completion of a building upon the city's property, the lessee is only entitled to the fund upon performance, and the construction of a building not upon the property leased is not a sufficient compliance with the contract.

6. SAME—MISUSE OF FUNDS—POWERS OF COMMON COUNCIL.

Injunction will issue to prevent the payment of money in furtherance of a private enterprise, under contract made by the council of a city.

Appeal from Emmet; Shepherd, J. Submitted October 19, 1910. (Docket No. 89.) Decided February 1, 1911.

Bill by William L. McManus, Derk De Ruiter, Reuben G. Porter, and William J. Jarman against the city of Petoskey, John J. Reycraft, mayor of said city, other officers and aldermen, and the Petoskey Block and Manufacturing Company, to restrain the threatened misuse of municipal funds. From a decree for complainants, defendant company appeals. Affirmed.

*E. E. Gilbert,* for complainants.

*W. S. Mesick,* for defendant company.

HOOKER, J. The complainants' bill alleges that they are owners of real estate and taxpayers in the city of Petoskey, and reside in Emmet county, in which said city is located; that said city is owner of $5,000, in the hands of one Curtis, and has authorized, through its council, the payment of the same to a corporation, which, for convenience, we will call the Block Company; that such payment is to be for an unlawful purpose. An injunction was prayed. A demurrer was filed; three of the grounds stated being:

"*First.* That said bill of complaint does not state such facts as entitle complainants to institute and maintain a cause of action in a court of equity, or to any relief therein.

"*Second.* That the interests of complainants in the subject-matter are not sufficient to entitle them to maintain their said bill of complaint, as the said bill nowhere shows, by direct allegation nor by inference from the facts stated, that severally nor combined they are interested to the amount of one hundred dollars.

"*Third.* That the bill of complaint is not sufficient to confer jurisdiction upon the court, because it in no way shows that complainants are interested to the amount of one hundred dollars, and that none of them shows definitely that any wrong has been done him that equity should redress."

The demurrer was overruled, and the defendants answered with the exception of Curtis, whose default was entered. A temporary injunction was allowed, and made perpetual on the hearing, and Curtis was commanded to

pay $5,000 into the city treasury. The Block Company only has appealed.

The facts necessary to an understanding of the case may be briefly stated as follows: The board of trade of Petoskey had title to the land involved in this case, and owned one of the buildings upon it. It may have owned other buildings, but that is perhaps unimportant. The property was occupied by the Climax Dish Company for manufacturing purposes. The Block Company purchased certain buildings—presumably not including the building owned by the board of trade—from the Climax Dish Company. The Block Company then took a lease of the premises owned by the board of trade for five years, with the right of a further term of five years, at an annual rental of $1, and agreed to keep the building—*i. e.*, the main factory building—insured against fire for the benefit of the board of trade. It was leased and rented for use as a factory (date of lease January 12, 1905), and was so occupied from that time forward. On June 11, 1907, the board of trade deeded the premises to the city of Petoskey, excepting and reserving all buildings erected by the Climax Dish Company and the Block Company, the same being then the property of the Block Company, receiving therefor from the city the sum of $1,950, paid under the authority of Act No. 529, Local Acts 1907. Apparently the main building was not one reserved. Afterwards that building burned, and thereupon, acting under and by authority of the common council, the mayor and city clerk executed a lease and contract with the Block Company for the period of 50 years, upon an annual rental of $1, and the condition of continued occupancy for manufacturing purposes. It also provided that the city should deposit with Curtis in escrow the proceeds of the insurance policies held by the city upon the building destroyed by fire which had been insured for its benefit, the same to be paid over to said company:

"When the new main building is completed, the city to have such interest in said building as the sum so paid over

to the said company bears to the entire cost thereof, and the city's interest to decrease in such proportion as the sum paid out by said company for labor, exclusive of executive labor, during the preceding year shall bear to the sum of $100,000, and the entire interest of the city in said building to pass to said company if said company shall pay out the sum of $100,000 in wages, exclusive of executive labor, within five years from and after the date hereof, it being understood and agreed, however, that if said company shall not pay out the sum of $100,000 for labor, exclusive of executive labor, within five years from and after the date hereof, the interest which said company may have theretofore acquired in said building shall revert to the city."

As a part of the consideration for this lease and agreement, the Block Company surrendered the then existing board of trade lease. Five thousand dollars insurance money came into the hands of Curtis for the city, and, as stated, this suit is brought to restrain payment to the Block Company, it having meantime rebuilt the building, not upon the premises belonging to the city, but on premises of its own adjacent thereto.

Jurisdiction. At the threshold of the case is the question of jurisdiction. Our statute, 1 Comp. Laws, § 435, provides:

"Such courts shall dismiss every suit concerning property, excepting suits between copartners, and suits for the enforcement of mechanics' liens, suits for the foreclosure of mechanics' liens, and suits for the foreclosure of mortgages, where the matter in dispute shall not exceed one hundred dollars, with costs to the defendant."

The complainant as a taxpayer has a right to ask chancery to restrain a threatened misuse of a city fund, in two classes of cases, viz.:

*First.* Where his interest in the fund or threatened damage to his property interests by its misuse amounts to $100.

*Second.* Where he has land worth $100 which is threatened with sale, or liable to a lien, for a tax, in consequence of the proposed misuse.

Otherwise the bill must be dismissed wherever it appears affirmatively in the case that the amount involved is less than $100, and that the case is not within the exceptions mentioned in the statute. The bill having been held sufficient on demurrer, and no appeal taken from that decision, it is not here open to criticism. The evidence shows that these complainants each own land in Petoskey subject to taxation, the value of which greatly exceeds $100. Were this a case where the money to be paid would have to be raised by taxation, there would be no doubt of the jurisdiction, because of the possibility of its becoming a lien on such land to the extent of its proportion of the taxes, and of a sale to enforce collection. This is put beyond controversy by our decisions.

In the present case the money is on hand, and the only theory upon which it can be held that complainants might invoke the aid of chancery is that the money on hand, being available for city purposes, and used for other and unlawful objects, will inevitably necessitate the raising by tax an equal amount that would otherwise be avoided. This is a step further than the court has ever gone, but we are of the opinion that it is within the spirit of the decisions. The cases of *City of Detroit* v. *Wayne Circuit Judge*, 128 Mich. 438 (87 N. W. 376), and *Kimmerle* v. *Village of Cassopolis*, 160 Mich. 90 (125 N. W. 65), are no obstacle to this holding, both being rested upon an absence of proof, and both recognizing the existing rule. For convenience in future controversies, we append a list of cases that have dealt with this provision of the statute: *Gamber* v. *Holben*, 5 Mich. 331; *White* v. *Forbes*, Walk. Ch. (Mich.) 112; *Fuller* v. *City of Grand Rapids*, 40 Mich. 395; *Putnam* v. *City of Grand Rapids*, 58 Mich. 416 (25 N. W. 330); *George* v. *Electric Light Co.*, 105 Mich. 5 (62 N. W. 985); *Savidge* v. *Village of Spring Lake*, 112 Mich. 93 (70 N. W. 425); *Campbell* v. *Electric Co.*, 113 Mich. 335 (71 N. W. 644); *Dodge* v. *Van Buren Circuit Judge*, 118 Mich. 189 (76 N. W. 315); *City of Detroit* v. *Wayne*

*Circuit Judges*, 128 Mich. 438 (87 N. W. 376); *Kimmerle* v. *Village of Cassopolis*, 160 Mich. 90 (125 N. W. 65); *Black* v. *Common Council of Detroit*, 119 Mich. 572 (78 N. W. 660).

The Merits. The Block Company is in no position to question the title of the city to the land or its ownership of the money in the hands of Curtis, when received by him. Its right to said fund must rest upon the validity and performance of its contract to rebuild upon the city property the building destroyed. It has neither filed a cross-bill nor asked affirmative relief in its answer, and is therefore at the most entitled to a dismissal of the bill. But the proof shows that it has not rebuilt the building upon the property of the city, which the contract required under any reasonable construction. Furthermore, the evidence shows that the agreement to pay this $5,000 to the Block Company was an attempt to use public moneys in furtherance of a private enterprise, which agreement the council could not lawfully make.

We are therefore constrained to affirm the decree of the circuit court, with costs.

MOORE, McALVAY, BROOKE, and BLAIR, JJ., concurred.