BRANDT *v.* LUCE.

1. EQUITY—JURISDICTION AS DEPENDENT UPON AMOUNT IN CONTROVERSY—TAXATION.

On demurrer to a bill filed by a number of taxpayers, averring that their interest in the subject matter exceeded $100, and seeking to restrain performance of a number of contracts for machinery to be used in county road improvements, the point that the bill fails to show jurisdiction as to amount or value was properly overruled: if it should appear upon the taking of proofs that the complainants have no such interest as to satisfy the requirements of the statute, the objection may be tenable.

2. HIGHWAYS AND STREETS—COUNTY SYSTEM—COMMISSIONERS—STATUTES.

The board of county road commissioners, under Act No. 283, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 2173 *et seq.*), are required to file in the office of the county clerk the reasons for not letting highway construction by contract and for proceeding by day labor, before they may construct the highways, and an estimate is required specifying and itemizing the roads and parts of roads on which money is to be expended: no express power is conferred to enter upon the business of road building.

3. SAME—POWERS OF COMMISSIONERS.

And under section 10 of the act the board may employ superintendents, engineers and others and buy proper machinery, tools and materials for the purpose of carrying out their work, and this power may be exercised wholly or partly when contracts for road building are let, or when bids have been rejected and work entered upon by day labor.

4. SAME—BILL OF COMPLAINT—TAXPAYER'S SUIT.

Where complainant's bill of complaint did not show that the preliminary steps required by the statute had been omitted by the board, and machinery had been purchased under contract, but it was charged that the county road commissioners could not lawfully contract for machinery of more than the value of $500 without advertising for

bids, and that they had attempted to do so, the aver-
ments of the bill did not state any ground for relief:
the power to purchase machinery was not limited by the
clause set up by the pleader, and the general authority
or duty to keep the highways in reasonable repair sup-
ported the exercise of authority by the commissioners.

5. SAME—CONTRACTS—APPROPRIATIONS.
     After the supervisors had provided for a tax of $40,000,
     the board of road commissioners did not exceed its
     authority in contracting for $22,000 worth of machinery
     to be paid for at stated intervals during three years,
     without interest, under section 21, prohibiting the board
     from contracting any indebtedness in excess of moneys
     on hand or of three-quarters of the taxes voted. Appro-
     priations made by the commissioners are to be treated
     as appropriated from such funds as the board had a right
     to appropriate and the contracts for machinery are there-
     fore valid.

Appeal from Branch; Knowlen, J. Submitted
June 13, 1913. (Docket No. 105.) Decided Septem-
ber 30, 1913.

Bill by Harry Brandt and others against Emery G.
Luce and others for an injunction, etc. From an
order sustaining a demurrer to complainants' bill,
complainants appeal. Affirmed.

*Palmer, Palmer & Palmer* and *H. H. & B. E. Bar-
low,* for complainants.

*C. C. Johnson* and *Lockerby & Bowen* and *Orrin
M. Bowen,* for defendants.

OSTRANDER, J. In the year 1912 the county of
Branch adopted the county road system, pursuant to
the provisions of Act No. 283, Public Acts of 1909
(2 How. Stat. [2d Ed.] § 2173 *et seq.*). County road
commissioners were appointed to act until others
should be elected in April, 1913. Those appointed
qualified and entered upon the duties of the office. A

tax of two mills upon each dollar of assessed valuation of property was voted, was spread upon the rolls, has been collected, and is in the treasury of the county. The sum is about $40,000. At various times, from December 31, 1912, to March 18, 1913, the said commissioners entered into contracts for the purchase of machinery to be used in constructing roads, the purchase price aggregating about $22,000, by the terms of some of which contracts some of the payments are deferred and are to be made, without interest, in the years 1914, 1915, 1916. No bids or sealed proposals for furnishing the machinery were advertised for, and there was no open competitive bidding for the same.

Before any payments fell due, and on or about April 1, 1913, fourteen residents of the county, taxpayers therein, filed their bill of complaint, setting up the foregoing facts, with various conclusions of law and fact, making the board of county road commissioners, the individual members of the board, the several vendors in said contracts, the clerk of said board, and the county treasurer parties defendant, seeking to have the said contracts declared invalid and to restrain performance thereof on the part of the board and the county. The defendants joined in a demurrer to the bill, assigning, specifically, as reasons for demurring that complainants do not allege such an interest in the matter as to give the court jurisdiction, that it appears by the bill that the actions of the board of county road commissioners complained about are lawful, and the contracts they have made are valid. After hearing, the demurrer was sustained, and a decree dismissing the bill was entered. The reason for sustaining the demurrer does not appear. No complaint is made that complainants were denied the right to amend the bill. See *Macomber* v. *Cottrell*, 162 Mich. 718 (128 N. W. 796).

Complainants present in this court two principal propositions:

(1) That the allegation of the interest of complainants, which is "that the interest of complainants in the matters involved in this suit exceeds the sum of $100," is sufficient, on demurrer, to sustain jurisdiction; (2) that a misuse of public funds is charged, because *(a)* the commissioners could not lawfully contract for machinery of more than $500 value without advertising for bids, and *(b)* they could not incur an indebtedness to be paid out of future tax levies not yet voted by the supervisors.

1. Counsel seem to be agreed that the suit concerns property, and is one of the class of suits which, under 1 Comp. Laws, § 435 (4 How. Stat. [2d Ed.] § 11952), courts of equity must dismiss, unless the matter in dispute exceeds $100. We have held *(Mc-Manus* v. *City of Petoskey,* 164 Mich. 390, 391 [129 N. W. 681]), that, when complainant, as a taxpayer, seeks to restrain a misuse of a public fund, he must show that his interest in the fund, or the threatened damage to his property interests by its misuse, amounts to $100, or that he has land worth $100, which, in consequence of the misuse of the fund, may be sold to satisfy, or be liable to a lien for, a tax.

As was pointed out in *Brassington* v. *Waldron,* 143 Mich. 364, 365 (107 N. W. 100), the statute does not make an allegation of the amount in dispute jurisdictional. The question is whether the bill containing the allegation above set out, with the one that complainants are taxpayers, is good on demurrer for want of proper interest. We think it is good. If it should appear that complainants, as taxpayers, have no such interest in the fund, or in the consequences of a threatened misuse of it, as to satisfy the statute, the objection may be made at the hearing.

2. In various portions of chapter 4 of the act powers are conferred, and duties and limitations of pow-

ers are imposed, upon boards of county road commissioners in such terms and with such arrangements of the sections that, unless amendments are made, there must forever be some uncertainty respecting the legislative intention. To the extent, and in the proportions, that the legislative language leaves the legislative meaning doubtful, interpretation and construction of an enactment is both a delicate and difficult task. It is especially a delicate task when, as in this case, the attack upon the conduct of a public board, undoubtedly possessing large and most important powers, is predicated upon so meager a showing of the facts which must have attended the action complained about. It is with reluctance that in such cases as this the court undertakes to determine whether public officers have exceeded their powers or have exercised powers not conferred upon them; the reason will become more apparent when the charges in the bill of complaint are read in connection with the voluminous provisions of the act.

Of the provisions involved in the contention of complainants, we set out, for convenience, section 19, a portion of section 20, section 10, and section 21 [chap. 4]:

"SEC. 10. Neither the clerk nor any member of the board of county road commissioners shall, directly or indirectly, either personally or as a member of any firm or stockholder in any corporation, be pecuniarily interested as contractor or employee in any contract entered into or work carried on by or for such board, or in property purchased or sold by or for such board: *Provided, however,* that this section shall not be construed to prevent the purchase of land for a road, from a member of the board or the clerk thereof. Said board of commissioners may employ such superintendents, engineers, servants and laborers, and purchase such machines, tools, appliances and materials as shall in their judgment be necessary or convenient for the proper carrying on of their work."

"SEC. 21. Said board of county road commissioners shall have no power to contract indebtedness for any amount in excess of the moneys credited to such board and actually in the hands of the county treasurer: *Provided,* that the board may incur liability upon contracts, after a tax is voted, to an amount not exceeding three-fourths of the said tax. It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel. The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system. In actions arising thereunder, service shall be made upon the chairman of the board of supervisors or the county clerk of the county made defendant therein, which shall be named in the process as the 'county of ———,' and any judgment obtained thereon against such county shall be audited and paid as are other claims against such county."

"SEC. 19. Said board of county road commissioners shall have authority to grade, drain, construct, gravel or macadamize any road under their control, or to place thereon any other form of improvement which in their judgment may be best, and may extend and enlarge such improvements; they shall have authority to construct bridges and culverts on the line of such road, and to repair and maintain the said roads, bridges and culverts; they shall have all the authority in respect to such roads, bridges and culverts which is vested in highway officers in townships. Said board of county road commissioners may maintain in their own name an action for any injury to any county road or to any part of the whole width thereof as laid out and established, or to any of the improvements thereon. All moneys recovered in any such action shall be paid to the county treasurer, and be credited to the county road fund. In all cases involving the expenditure of an amount greater than five hundred dollars for the building, rebuilding

or repairing of roads or bridges, the board of county road commissioners shall advertise for sealed proposals for such work. The board shall have the right to reject any and all bids, and may do the work by day labor, purchasing the necessary material and employing the labor therefor: *Provided, however,* in case the board shall decide to do the work by day labor, the plans and specifications together with all bids received thereon, and the reason, in writing, for not letting the job by contract, shall be filed in the office of the county clerk.

"SEC. 20. On or before the first day of October of each year, said board of county road commissioners shall determine upon the amount of tax which in their judgment should be raised for such year in said county for the purposes aforesaid, specifying and itemizing the roads and parts of roads upon which such moneys are to be expended, stating the amount asked for each of such roads, and shall cause such determination to be entered upon their records. * * * All moneys raised under the provisions of this act shall be expended by such board of county road commissioners exclusively for the purposes herein mentioned."

There is no express power conferred upon the board to enter upon the business of road building in these or in other sections of the law. There is power (section 19) to reject bids for construction and, after rejecting them, to do the work to which the bids referred by *day labor,* purchasing necessary material, in which case the plans and specifications for the work and all bids received and the reason, in writing, for not letting the job by contract, shall be filed in the office of the county clerk. That the legislative purpose was that roads should be constructed by contract is evidenced, also, by the provisions of section 20. It is required that an estimate be furnished to the supervisors, *specifying and itemizing* the roads and parts of roads upon which such moneys are to be expended, stating the amount asked for each of such roads. This is to be made a matter of record.

It is true that in section 10 the board is given power to employ superintendents, engineers, and others, and to purchase such machines, tools, appliances, and materials as, in their judgment, may be necessary or convenient *for the proper carrying out of their work.* But this power, it is clear, may be exercised, in whole or in part, when contracts for road building are let, and also when bids have been rejected, and performance of particular work by *day labor* has been entered upon. And, besides, there is a continuing duty imposed upon counties, by the act, to maintain county roads and bridges in a condition reasonably safe for travel.

We are advised by the bill of complaint that the supervisors at their October, 1912, session, after considering the recommendations of the board of county road commissioners, decided upon the amount of taxes to be raised in that year in said county of Branch. We are not told what recommendations were made by the commissioners, and do not know how, if at all, the desire and purpose of the commissioners to expend $22,000 for machinery was laid before the supervisors. We are not told whether any existing roads have been by proper action of the commissioners taken over as county roads (chapter 4, §§ 10, 17, 18) or have been laid out by the commissioners. We do not know whether any proposals for doing any work have been advertised for and rejected, in consequence of which it has been determined to do the work by *day labor.*

Assuming that the commissioners had by proper action arrived at the point of purchasing road machinery, the question whether they might do so without advertising for bids must be, we think, answered in the affirmative. The limitation of power found in section 19 does not in terms extend to contracts for the purchase of machinery. The two provisions are not so connected in the framing of the act as to sup-

port the implication that proposals or bids must be received before machinery is purchased, and, as has been stated, there is a general, continuing duty imposed, which may in performance require the use of machinery, to maintain roads taken over and laid out as county roads. The only, and we think insufficient, consideration opposed to this conclusion is the one that road machinery is bought for the purpose of building, rebuilding, or repairing roads, and the cost of machinery, indirectly at least, enters into the cost of the roads, and therefore is an expenditure for building roads.

The indebtedness created by the contracts does not exceed the liability permitted by the provisions of section 21. Whatever the intention of the commissioners may have been in executing contracts calling for deferred payments, each contract executed was an appropriation of a part of the fund—the only fund at the disposal of the commissioners. Assuming there was $40,000 in the fund, there remained therein, subject to appropriation, if these contracts are held to be valid, the difference between the aggregate amount of the contracts and the $40,000. The fact that the contracts call for payments to be made in later years creates suspicion that it was intended that only those payments falling due in 1913 should be made out of the fund provided for when the contracts were made. The fact that the deferred payments do not draw interest is indicative of this purpose. The ordinary business man would assume that a price was agreed upon for the machinery which included some consideration for the deferred payments. It is not entirely reasonable to suppose that, being entitled to immediate, or practically immediate, payment for the machinery, out of a fund already provided for and soon to be in existence, the vendors (or the vendees) contemplated that a portion of the fund would be kept on hand for a numbers of years and

then paid to them; the county, perhaps, having the benefit of such interest as the money would meantime earn. The bill does not charge that the parties to the contracts proposed to evade or disobey the law. It charges, in effect, that the result of what has been done is the contracting of a debt to be paid in the years 1914, 1915, and 1916, out of moneys not actually voted or collected when the indebtedness was created. There is to be considered the presumption of official honesty and obedience to the law. We are not prepared to say that the mere form and terms of the contracts require us to declare them invalid.

We do hold, and concerning this there should be no misapprehension, that the appropriations made by them are appropriations of the fund with respect to which, and with respect to which only, the commissioners had power to incur any indebtedness. To the amount that an indebtedness was created it must be paid out of and, to that extent, it exhausted the fund, and as in this view the contracts may be valid, notwithstanding the provision for deferred payments, we decline to hold them invalid.

The decree below will be affirmed; but neither party will recover costs of this appeal.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.