TOWNSHIP OF LOWELL *v.* PATTERSON.

1. DRAINS—COUNTY DRAIN COMMISSIONER—DISCRETION—LOWEST RESPONSIBLE BIDDER.

> Although Act No. 316, Pub. Acts 1917, chap. 4, § 3, authorizing the county drain commissioner to receive bids and let contracts for the construction of drains to the lowest responsible bidder, clothes the commissioner with a reasonable discretion in determining who is the "lowest responsible bidder," such discretion may not be exer-

On discretion of public contractor in choosing between bidders for public contracts, see note in 38 L. R. A. (N. S.) 653.

cised arbitrarily and in the interest of a particular bidder, but must be exercised in the interest of the public.

2. SAME—DETERMINATION OF RESPONSIBILITY—ARBITRARY AWARD NOT WARRANTED.

Where the county drain commissioner rejected the lowest bid on the ground that the bidder was a stranger to him, without determining that he was not a responsible bidder, and awarded the contract to the next higher bidder because he knew by experience that said bidder would properly perform the contract, the action of the commissioner was unwarranted, and the award of the contract must be set aside.

3. SAME—ADVERTISING DRAIN—NOTICE—SUFFICIENCY—STATUTE.

In view of the purpose of section 1, chap. 4, Act No. 316, Pub. Acts 1917, as amended by Act No.˙ 308, Pub. Acts 1919, viz., to inform prospective bidders of the work to be done, a notice in the advertisement as follows, "also the sale of the bridges, according to plans and specifications now on file and in my office," *held*, sufficiently specific to comply with the requirement of said statute that the notice shall also state "the location, number, type and size of all culverts and bridges and the conditions upon which said contract or contracts will be awarded," since, in order to form a reliable basis on which to bid, an examination of the plans and specifications on file with the commissioner would be necessary.

4. EQUITY—JURISDICTION—LIEN ON LAND.

Equity has jurisdiction to enjoin the letting of a drain contract to other than the lowest responsible bidder, at the instance of two townships, although the additional cost would be less than $100, since a part of the money to pay for the work would be raised by spreading a tax on all the real estate in the townships, creating a lien thereon which might be enforced by a sale thereof.

5. COSTS—BOTH PARTIES APPEALING—AFFIRMANCE.

Where both parties appealed, no costs will be awarded on affirming the decree of the court below.

Cross-appeals from Kent; McDonald (John S.), J. Submitted April 20, 1921. (Docket No. 110.) Decided June 6, 1921.

214—Mich.—34.

Bill by the townships of Lowell and Bowne against Robert B. Patterson, drain commissioner of Kent county, and others to enjoin the construction of a drain. From the decree rendered, all parties appeal. Affirmed.

*R. M. Shivel* and *Charles E. Ward,* for plaintiffs.

*C. F. Gates* and *Smith & Hunter,* for defendants.

SHARPE, J. The bill of complaint herein is filed by plaintiffs to enjoin the defendants from carrying out certain contracts entered into by the defendant Patterson as drain commissioner of the county of Kent with the other defendants. It appears that an application was made to the commissioner for the cleaning out, deepening, etc., of the Pratt lake drain and another for similar work on the Kilgus drain, a part of each of which was in the townships of Lowell and Bowne. In his final order of determination, the commissioner consolidated these drains. He afterwards advertised the letting of the contract for such work, by auction, stating therein, "reserving to myself the right to reject any and all bids." On the day appointed (December 9, 1919), a number of bidders appeared. The first bid was 25 cents per cubic yard for earth removed. This was reduced by a number of bids, the last one being made by Charles H. Montague at 14.4 cents. The defendant Woolman Construction Company had theretofore bid 14.5 cents. There being no other bids, the commissioner announced, in effect, that he rejected the last bid of Montague and "struck it off to Mr. Balhoff." A contract was thereupon entered into with the construction company, for whom Mr. Balhoff was bidding, for the performance of the work. The commissioner had required that each bidder should deposit with him, before the bidding started, a certified check for $1,000

as security that he would enter into the contract, should it be awarded to him, and furnish the required bond for performance. Both Montague and the construction company had made deposit of such checks.

1. Plaintiffs contend that the commissioner had no authority to enter into the contract because not awarded to the lowest responsible bidder. Section 3 of chapter 4 of Act No. 316, Pub. Acts 1917, under which the commissioner was acting, provides:

"The county drain commissioner shall thereupon proceed to, receive bids and let contracts for the construction of the sections, and make contracts with the lowest responsible bidder giving adequate security for the performance of the work."

We have no doubt that the intent of the statute is to clothe the commissioner with a reasonable discretion in determining who is the "lowest responsible bidder." Such discretion, however, must not be exercised arbitrarily. If exercised at all, it must be in the interest of the public and not that of a particular bidder. The commissioner had required the bidders to evidence their responsibility by the deposit of the certified checks. Doubtless, he had a right also to satisfy himself that Montague would be able to furnish the required security. But it is apparent from his own testimony that he did not reject Montague's bid for this reason. He had permitted him to make bids and had no right to reject the last one made by him unless satisfied that he was not a "responsible bidder." The only reason assigned by him is that Montague was a stranger to him and that he knew by experience that the construction company would properly perform the contract. We are impressed that the commissioner acted in good faith, believing that under his reserved power "to reject any and all bids" he was justified in rejecting that

last made by Montague. Counsel for the defendants make no claim that the action of the commissioner was justified under this reservation, so we do not consider it. They now urge that the proofs show Montague was not a responsible bidder and that therefore the action of the commissioner in rejecting his bid should be sustained. Without considering this disputed question of fact, it is sufficient to say that the commissioner at the time the bid was rejected made no such determination. As was said in *McBrian* v. *City of Grand Rapids*, 56 Mich. 95, what he was required to do—

"is for the benefit of the public; the object being to invite competition, and prevent favoritism and fraud in awarding contracts for public works. It was not the intention of the legislature to leave it discretionary with the board whether the contract should be made with the lowest responsible bidder."

We are constrained to hold, as did the trial court, that the action of the commissioner in rejecting the last bid of Montague was unwarranted and that the award of the contract afterwards made to the construction company must be set aside. See, also, *Twiss* v. *City of Port Huron*, 63 Mich. 528; *Brady* v. *Hayward*, 114 Mich. 326; *Fourmy* v. *Town of Franklin*, 126 La. 151 (52 South. 249); *Kelling* v. *Edwards*, 116 Minn. 484 (134 N. W. 221, 38 L. R. A. [N. S.] 668); *Connolly* v. *Freeholders*, 57 N. J. Law, 286 (30 Atl. 548); *Ross* v. *Board of Education*, 42 Ohio St. 374; *Times Publishing Co.* v. *City of Everett*, 9 Wash. 518 (37 Pac. 695); *American Pavement Co.* v. *Wagner*, 139 Pa. St. 623 (21 Atl. 160); *Chippewa Bridge Co.* v. *City of Durand*, 122 Wis. 85 (99 N. W. 603, 106 Am. St. Rep. 931); *Inge* v. *Board of Public Works*, 135 Ala. 187 (33 South. 678, 93 Am. St. Rep. 20); *People* v. *Gleason*, 121 N. Y. 631 (25 N. E. 4).

2. The advertisement contained the following lan-

guage relative to the bridges to be built across said drain:

"Also the sale of the bridges, according to plans and specifications now on file and in my office."

An amendment to section 1 of chapter 4 of Act No. 316, above referred to, adopted in 1919 (Act No. 308), provides that the notice of letting shall also state—

"the location, number, type and size of all culverts and bridges and the conditions upon which said contract or contracts will be awarded."

This section further provides:

"In no case shall said notice contain the minutes of survey or table of cuttings which shall be kept on file in the office of the drain commissioner and be open to inspection by all parties interested at all times after the giving of said notice until the date therein set."

It appears from the proofs that plans and specifications for the bridges had been prepared and were in the office of the commissioner and open to inspection at all times after the publication of said notice. We are not able to perceive in what manner the location of the bridges could be described in the notice with any degree of accuracy without a reference to the survey. The statute expressly provides that such minutes shall not be included therein. The purpose of the notice is to inform prospective bidders of the work to be done. It is apparent that no such specific information could be set out in such notice as would form a reliable basis on which to bid without an examination of the plans and specifications on file with the commissioner. After a consideration of the entire section and the purpose sought to be accomplished thereby, we are of the opinion that the notice as to the bridges was sufficiently specific and that

the trial court was justified in the conclusion reached by him that the contract for building same should not be set aside.

3. It is insisted by counsel for the construction company that as the proportion of the difference in amount between the cost of the work on the drain under the two bids which would be spread on the townships at large would be less than $100, the plaintiffs are not entitled to seek relief therefrom in a court of equity. We think there is no question as to the right of the plaintiffs to file this bill. A part of the money to pay for the work done under these contracts, if performed, would be raised by spreading a tax on all the real estate in the townships. A lien would thereby be created thereon which might be enforced by a sale thereof. In *McManus* v. *City of Petoskey*, 164 Mich. 390, 394, it is said:

"Were this a case where the money to be paid would have to be raised by taxation, there would be no doubt of the jurisdiction, because of the possibility of its becoming a lien on such land to the extent of its proportion of the taxes, and of a sale to enforce collection. This is put beyond controversy by our decisions."

See, also, *Soule* v. *City of Grand Haven*, 174 Mich. 276, and cases cited; *Brandt* v. *Luce*, 177 Mich. 184.

As both parties appeal, the decree will be affirmed without costs.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.