THOMSON *v.* CITY OF DEARBORN.


1. MUNICIPAL CORPORATIONS—TAXPAYERS' ACTION—PARTIES—PARK-
   ING-METER ORDINANCE VIOLATIONS—FINES.

   Taxpayer of home-rule city was a proper party to bring suit to
   compel city to place funds derived from fines for violation of
   parking meter ordinance in general fund of city rather than
   special fund devoted to parking meter ordinance fund purposes,
   since the amount of such funds would otherwise have to be
   raised by taxation (Dearborn Ordinance No 50–550).

2. SAME—GENERAL FUND—SPECIAL FUND—CREDITS—DEPOSITS.

   The failure to properly credit the general fund of a municipality
   with moneys that should be used to augment it is tantamount
   to taking money from such fund and depositing it in a special
   fund to be used for the purposes for which such special fund
   has been created.

3. SAME—FINES—PARKING ORDINANCE.

   The right of a home-rule city to credit receipts from fines and
   penalties imposed for violation of a city parking meter ordi-
   nance to a special, rather than the general, fund is not a dis-
   cretionary matter (Dearborn Ordinance No 50–550).

4. SAME—REVENUE BONDS—SOURCE OF PAYMENT.

   The source from which obligations issued in accordance with
   the revenue bond act of 1933 are paid is limited to the revenues
   derived as the result of the maintenance and operation of the
   improvement made with the funds raised thereunder, as such
   obligations do not evidence a debt of the municipality which
   issued the bonds (CLS 1954, § 141.107).

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur, Taxpayers' Actions §§ 4, 11.
[2, 3, 7] 37 Am Jur, Municipal Corporations § 91.
[4–6] 43 Am Jur, Public Securities and Obligations §§ 282, 285.
[8] 12 Am Jur, Constitutional Law § 621.
[9] 14 Am Jur, Costs § 23.

5. SAME—PARKING SYSTEM—REVENUE BONDS.

A municipal parking system is a public improvement for which revenue bonds may be issued by a home-rule city which are payable from the revenues received from the maintenance and operation of the system (CLS 1954, § 141.107).

6. SAME—REVENUE BONDS—PARKING SYSTEM.

The holders of revenue bonds, issued by a home-rule city in connection with the establishment of a municipal parking system, are not entitled to receive payment of interest and principal except from the net revenues of the improvement and are not entitled to the benefit of additional funds collected from other sources. (CLS 1954, § 141.107).

7. SAME—PARKING SYSTEM—FINES AND PENALTIES—GENERAL FUND.

Fines and penalties imposed for violation of a home-rule city's parking meter ordinance are not revenues from the system, since it is not a charge or fee for services rendered, but rather a penal provision to enforce by punishment, for the benefit of the public generally, the regulations imposed by the city for the use of the facility, hence, such fines should be credited to the general fund of the city (CLS 1954, § 141.107).

8. CONSTITUTIONAL LAW—DUE PROCESS—JUDGMENT—EVIDENCE.

Defendant home-rule city was not denied due process because trial court failed to request presentation of testimony in taxpayer's suit to test validity of its parking meter ordinance before entry of decree, where defendant did not present, nor request leave to present, evidence after being apprized of court's opinion that only questions of law were presented and the nature of such proofs as defendant might wish to present has not been indicated.

9. COSTS—PUBLIC QUESTION—VALIDITY OF ORDINANCE—FINES—FUNDS.

No costs are allowed in suit to test validity of home-rule city ordinance ordering deposit of fines and penalties for violation of parking meter ordinance deposited in a special, rather than the general, fund, a public question being involved (Dearborn Ordinance No 50–550).

Appeal from Wayne; Murphy (George B.), J. Submitted October 4, 1956. (Docket No. 39, Calendar No. 46, 959.) Decided December 28, 1956. Rehearing denied May 17, 1957.

Bill by James Thomson against the City of Dearborn, a municipal corporation, its officers and agents, to test validity of provision in ordinance that fines and penalties for parking meter violations be credited to a special fund, and to enforce payment into general fund. Decree for plaintiff. Defendant city appeals. Affirmed.

*James Thomson, in propria persona.*

*Dale H. Fillmore,* Corporation Counsel (*Ralph B. Guy, Jr.,* Assistant, of counsel), for defendant.

CARR, J. It appears from the record in this case that the defendant city has heretofore established a parking meter system, and by Ordinance No 50–550, as enacted by its council, has provided for the regulation of the use of parking meters. Section 11 thereof was amended by action of the council taken on December 14, 1954, effective December 22d thereafter. Among other provisions, said amendment contains the following language:

"(e) All sums collected by the traffic violations bureau as well as from the parking meters in the police headquarters and fire station No 2 under the provisions of this ordinance, and all sums paid by the Dearborn chamber of commerce in accordance with this ordinance, and all fines or penalties imposed arising out of parking meter violations shall be paid to the treasurer of the city and credited to the parking meter receiving fund to be disbursed in accordance with the provision of Ordinance 50–551."

The plaintiff herein, a resident, property owner, and taxpayer of the city, has brought this suit to test the validity of the provision above quoted insofar as it relates to the disposition of fines and penalties received by the city because of parking meter violations. It is charged in the bill of complaint that

fines collected for the violation of an ordinance must be deposited in the general fund of the city, but that defendant has heretofore, pursuant to the ordinance provision quoted, deposited such collections in the parking meter receiving fund for the benefit of said fund and intends to continue to do so in the future. It is further charged that no moneys may properly be paid into the special fund in question other than those derived from the revenues from the meters, that the amount of money to be raised by taxation for city purposes each year is determined by reference, among other factors, to the estimated revenue from fines and penalties, that withholding the collections in issue here from the general fund has necessitated, and will in the future necessitate, the raising of an additional amount by taxation on property within the city to make up for the deficiency resulting from improperly placing fines and penalties in the parking meter receiving fund, and that, in consequence, plaintiff, as a taxpayer, has been and will be prejudiced by the conduct of which he complains. It is averred that the clause of the amended ordinance, to which objection is made, is invalid. A decree was sought declaring such fact and restraining the defendant city, its officers and agents, permanently from placing such fines or penalties in any fund other than the general fund, and further ordering that the sums previously collected and credited to the special fund be transferred.

Defendant city by its answer admitted that plaintiff was a resident of Dearborn, the owner of real estate therein, and a taxpayer. The adoption of the amendment to Ordinance No 50–550 was also admitted, as were the collections resulting from parking meter violations and the deposit thereof in the special fund. Defendant further asserted the validity of the amendment, alleging specifically that it was not in conflict with either the city home-rule act

or the revenue bond act.*  By way of special defenses the city further alleged in its answer that plaintiff was not entitled to bring the suit and that the bill of complaint did not state a cause of action for equitable relief.

On the hearing of the cause before the circuit judge no proofs were offered other than exhibits showing appropriations of defendant city for the fiscal years ending June 30, 1955, and June 30, 1956. It appearing that the primary question at issue was one of law, the court suggested that counsel prepare and submit briefs, further stating that, after examination of such briefs, if testimony was deemed desirable for purposes of the record an opportunity to introduce it would be granted. It appears from the original record in the case that briefs were furnished as requested, and under date of April 10, 1956, the trial judge filed an opinion sustaining plaintiff's position in the litigation. On April 20th following, a decree, approved as to form by counsel for defendant, was entered in accordance with the opinion, declaring that the provision of the amended ordinance with reference to the crediting of fines and penalties, imposed for violations of the ordinance, to the parking meter fund was invalid. The decree further denied defendant's motion to dismiss, and required the deposit of the fines so collected in the general fund of the city. From such decree the city of Dearborn has appealed. It is contended on behalf of appellant that the trial judge was in error in holding that plaintiff was entitled to maintain his suit, that the decree is erroneous in declaring the ordinance provision in question invalid, and that testimony should have been taken in the cause.

As before noted, it is undisputed that plaintiff is a resident of the defendant city, that he owns real

_____
* PA 1933, No 94 (CL 1948, § 141.101 *et seq.*, as amended [Stat Ann 1949 Rev and Stat Ann 1955 Cum Supp § 5.2731 *et seq.*]).

property therein, and that he is a taxpayer. The action of the trial court in denying the motion to dismiss the bill of complaint on the theory that plaintiff was not entitled to bring the action finds support in a number of decisions of this Court. In *McManus* v. *City of Petoskey*, 164 Mich 390, plaintiff taxpayers brought suit to restrain the city from disposing of a fund in the sum of $5,000 for the benefit of a certain private corporation. Defendant appealed from a decree granting the relief sought, claiming, among other arguments advanced, that plaintiffs were not entitled to maintain the action. In rejecting the contention and affirming the decree, it was said, in part (p 394):

"The evidence shows that these complainants each own land in Petoskey subject to taxation, the value of which greatly exceeds $100. Were this a case where the money to be paid would have to be raised by taxation, there would be no doubt of the jurisdiction, because of the possibility of its becoming a lien on such land to the extent of its proportion of the taxes, and of a sale to enforce collection. This is put beyond controversy by our decisions.

"In the present case the money is on hand, and the only theory upon which it can be held that complainants might invoke the aid of chancery is that the money on hand, being available for city purposes, and used for other and unlawful objects, will inevitably necessitate the raising by tax an equal amount that would otherwise be avoided. This is a step further than the court has ever gone, but we are of the opinion that it is within the spirit of the decisions. The cases of *City of Detroit* v. *Wayne Circuit Judge*, 128 Mich 438; and *Kimmerle* v. *Village of Cassopolis*, 160 Mich 90, are no obstacle to this holding, both being rested upon an absence of proof, and both recognizing the existing rule. For convenience in future controversies, we append a list

of cases that have dealt with this provision of the statute:   (Citing cases)."

The conclusion would seem to necessarily follow in the case at bar that if money that should be credited to the general fund is diverted therefrom such fund will suffer annually to the extent of the diversion, and the raising of a like sum by taxation each year will be required.   As a practical proposition, the failure to properly credit the general fund with moneys that should be used to augment it is tantamount to taking money from such fund and depositing it in a special fund to be used for the purposes for which such special fund has been created.

In accord with the holding in the *McManus Case* is *Schurtz v. City of Grand Rapids,* 199 Mich 20. There the plaintiff, as a resident taxpayer of the city, brought suit to enjoin an alleged improper payment of city funds.   It was held that plaintiff was entitled to bring suit, but that on the merits of the case the bill of complaint was properly dismissed for the reason that the contract under which the city proposed to make the payment in question was not void but merely voidable and that, in consequence, the city alone was entitled to avoid it.

In *Township of Lowell v. Patterson,* 214 Mich 528, the plaintiff townships filed a bill of complaint to enjoin defendants from constructing a certain drain.   Specifically, it was urged that the drain commissioner of the county had no authority to enter into the contract for such construction because he had failed to award it to the lowest bidder.   In disposing of the objection that the plaintiffs were not entitled to seek relief in a court of equity, it was said (p 534):

"We think there is no question as to the right of the plaintiffs to file this bill.   A part of the money to pay for the work done under these con-

tracts, if performed, would be raised by spreading a tax on all the real estate in the townships. A lien would thereby be created thereon which might be enforced by a sale thereof."

In support of the conclusion reached the Court cited *McManus* v. *City of Petoskey, supra; Soule* v. *City of Grand Haven,* 174 Mich 276; and *Brandt* v. *Luce,* 177 Mich 184. In accord with the foregoing decisions and supporting the right of the plaintiff in the instant case to seek equitable relief are: *Cooper* v. *City of Detroit,* 222 Mich 360; and *Carrier* v. *State Administrative Board,* 225 Mich 563.

Counsel for appellant have cited as supporting their contention the case of *Miller* v. *Grandy,* 13 Mich 540. Involved there was an act of the State legislature undertaking to make legal the action of several townships in Jackson county in paying bounties to volunteers for military service and "to refund money to pay bounties." It was held that the statute could not properly be construed as covering advances of money made by individuals on their own account rather than on the credit or on the authority of a township. In a suit brought by taxpayers for injunctive relief to prevent a township board from allowing accounts of individuals for money pledged or advanced, it was held that the averments of the bill of complaint were insufficient to permit it to be sustained as an attempt to obtain redress for a private grievance by way of injunction against preliminary proceedings by the township board, and that plaintiffs were not in position to seek relief on behalf of the public. The scope of the decision in the case and the basis of the holding were pointed out in *Johnson* v. *Gibson,* 240 Mich 515, 519, 522. Under the facts in the case at bar, said decision, construed in the light of opinions in later cases, may not be regarded as controlling.

Counsel for appellant also cite *City of North Muskegon* v. *Bolema Construction Company, Inc.,* 335 Mich 520; and *Menendez* v. *City of Detroit,* 337 Mich 476. The question at issue in the first case was the authority of the city to provide for a service charge in connection with the use of the municipal sewerage system. It was held that the amount of such charge or fee rested in the sound discretion of the city officials, with which the Court should not interfere. The decision may not be regarded as authority for the claim of the defendant in the case at bar. We are not here concerned with the exercise of discretionary authority but, rather, with the right of the city to credit receipts from fines and penalties imposed for violation of the city parking ordinance to the special fund mentioned. In the *Menendez Case* a decree for defendant was upheld in a suit by taxpayers to enjoin transfers from the municipal parking meter fund to another fund to be used in the liquidation of revenue bonds. This Court concluded that the showing made on behalf of plaintiffs was not sufficient to establish "a justiciable interest in the subject matter." A different situation is presented in the case at bar. The trial court was not in error in ruling that plaintiff here was entitled to institute suit.

This brings us to the question whether fines and penalties received by the city as the result of violations of the ordinance may properly be credited to the parking meter fund for the benefit of security holders. It is the claim of the plaintiff that the obligations issued in connection with the establishment of the municipal parking system in accordance with the revenue bond act of 1933, above cited, may be paid only from net revenues derived from the operation of the improvement. Attention is directed

to section 7 of the act (CL 1948, § 141.107* [CLS 1954, § 141.107, Stat Ann 1955 Cum Supp § 5.2737]) which specifically provides that:

"The principal of and interest upon such bonds shall be payable solely from such net revenues derived from the operation of the public improvement purchased, acquired, constructed, improved, enlarged, extended and/or repaired from the proceeds of such bonds, as shall be pledged thereto in the authorizing ordinance, which may include, if the ordinance so provides, net revenues derived by reason of future improvements, enlargements, extensions and/or repairs thereto. No bond or coupon issued pursuant to this act shall be a general obligation of the borrower or shall constitute an indebtedness of the borrower within the meaning of any State constitutional provision or statutory limitation."

Counsel for appellant contend that as a home-rule city it has the power to credit funds derived from parking meter violations other than to the general fund. Obviously such argument amounts to the claim in the instant case that it is entitled to credit fines and penalties so received to the special fund here in question. However, the legislature in the revenue bond act has seen fit to limit the source from which obligations issued in accordance with its provisions may be paid. A municipal parking system is a public improvement, and revenue bonds issued for the establishment of such system must, as the term indicates, be paid from the revenues derived as the result of the maintenance and operation of such improvement. Such obligations do not evidence a general debt of the city. *Young* v. *City of Ann Arbor,* 267 Mich 241. As to the power of the legislature with reference to home-rule cities, see *City of Kalamazoo* v. *Titus,* 208 Mich 252. Of in-

---

* As amended by PA 1949, No 244.

terest, also, particularly with reference to the interpretation and application of the revenue bond act of 1933, is *Wayne Village President* v. *Wayne Village Clerk,* 323 Mich 592 (8 ALR2d 357). In summarizing the conclusions there reached, it was said (pp 605, 606):

"As to the objections to the legality of the ordinance here involved and here raised by the defendant, we conclude that a municipal parking system combining parking facilities both on public streets and on off-street property of a municipality, for which a charge for use is made, is a public use, and a public improvement within the meaning of the revenue bond act; that the acquisition and operation of such system by a municipality is not forbidden by the Michigan Constitution; that a municipality has the power to pledge the net revenues therefrom for the acquisition of off-street property and the operation and maintenance thereof as a part of such system; that the municipality has the power to issue revenue bonds payable solely out of the net revenues derived from the operation of such system, and to pledge such net revenues for payment of such bonds; and that the municipality has the power to pledge itself to acquire and maintain parking meters on such street and off-street property, and charge rates for the use of such facilities to provide for the payment of such bonds."

The holders of revenue bonds, issued by the city of Dearborn in connection with the establishment of a municipal parking system, are not entitled to receive payment of interest and principal except from the net revenues of the improvement. They are not entitled to the benefit of additional funds collected from other sources.

Counsel for appellant assert by way of argument that fines and penalties imposed for violation of the parking meter ordinance should be regarded as revenue from the system. With such claim we are

unable to agree. A fine imposed on one convicted of such a violation is not in any proper sense of the term a charge or fee for service rendered. The purpose of the penal provisions of the ordinance is to enforce, for the benefit of the public generally, the regulations imposed by the city for the use of the facility. The fine is imposed by way of punishment rather than as a charge for the service that has been rendered. The trial judge was right in holding that such fines and penalties are not revenue from the operation of the improvement. The conclusion follows that such moneys should be credited and used in accordance with their true character.

Appellant claims that the decree, in the absence of testimony, should not have been entered in accordance with the opinion filed. Obviously it was the thought of the trial judge that the disposition of the case involved solely the determination of legal issues. In accordance with his request, briefs were furnished to him by counsel, and he prepared and filed his opinion setting forth his conclusions. The decree was not entered for a period of 10 days thereafter. It does not appear that counsel for defendant at any time advised the trial judge that they desired to offer evidence for the purposes of the record. No claim is made that a further hearing was requested, nor is there any explanation why such course was not followed. It may be noted, also, that there is no indication either in the record or in the brief of counsel as to the nature of the proofs for the introduction of which they now say the trial judge, by affirmative action on his part, should have afforded an opportunity. We have no doubt the court would have received any proofs offered, and at an appropriate time, if request for leave to present such had been made. Appellant's claim that it was denied due process of law is without merit.

The decree of 'the trial court is affirmed. Because of the nature of the questions at issue, no costs are allowed.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and BLACK, JJ., concurred.

BOYLES, J., did not sit.