## SELTZER v. STERLING TOWNSHIP.

1. TOWNSHIPS—WATER SUPPLY—SEWAGE DISPOSAL—BONDS.
   The revenue bond act authorizes townships to purchase, acquire, construct, improve, enlarge, extend, or repair a water supply system and a sewage disposal system, and to own, operate, and maintain the same, notwithstanding no bonds are issued in connection therewith (PA 1933, No 94, as amended).

2. SAME—WATER SUPPLY—CAPITAL IMPROVEMENTS—FINANCING.
   The revenue bond act does not restrict a township from making a forced levy for capital improvements involved in the construction of a water supply system rather than financing the improvement through issuance of bonds or other means (PA 1933, No 94, as amended).

3. SAME—WATER SUPPLY—FINANCING OF CAPITAL IMPROVEMENT.
   The question of what is a reasonable charge per lot for the financing of a water system for a township depends upon the circumstances and facts in the individual case, but evidence presented in action to recover $150 per 60-foot lot from defendant township as a flat charge above tap-in and water rates is held, not shown to have been unreasonable (PA 1933, No 94, as amended).

4. SAME — WATER SYSTEM — ESTIMATE OF COST — SUFFICIENCY OF RATES.
   Determination at the outset of the entire cost of a township water system and an estimate of revenue be made to determine whether or not the system will be self-liquidating, prior to adoption of an ordinance providing for the construction of the system need be made when bonds are issued under the revenue bond act, but such determinations need not be made when such method of financing is not pursued (PA 1933, No 94, as amended).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 17A Am Jur, Drain and Sewers §§ 60–84.
   52 Am Jur, Towns and Townships § 25.
[6] 14 Am Jur, Costs § 91.

5. Same—Water System—Charge for Capital Improvements.

Imposition of $150 charge per 60-foot lot upon which houses were constructed after adoption of ordinance, for capital improvement involved in establishing township water supply system *held*, not shown to have been an unreasonable and confiscatory burden upon either a large or small user (Sterling Township Ordinance No 34).

6. Costs—Public Question—Townships—Water System.

No costs are allowed in action to recover sums paid to township under protest for capital improvements for water system, a public question being involved.

Appeal from Macomb; Carroll (Howard R.), J. Submitted May 8, 1963. (Calendar No. 52, Docket No. 50,104.) Decided October 10, 1963.

Action by Ralph L. Seltzer and Larry Shalit, co-partners doing business as Largo Homes, against Sterling Township, a municipal corporation, for sums paid under protest by reason of ordinance requiring payment of a "capital charge" on building lots to finance improvements to township water and sewer system. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Paul Sislin,* for plaintiffs.

*Miller, Canfield, Paddock & Stone* and *Nunneley & Nunneley,* for defendant.

Kavanagh, J. This law action was brought in the Macomb county circuit court to recover from defendant township the sum of $150 per lot, totaling $8,-400, paid by plaintiffs as a privilege fee for "capital improvements." Payments were made under protest and the township was aware of the protest. The payments were in addition to water tap-in fees of $125 per lot paid under the Sterling township water ordinance. The tap-in fees are not involved

in this action. In addition to the privilege fee and the tap-in fee, plaintiffs paid the water rate established by the ordinance based upon the amount of water used the same as other users of water.

The cause was tried in the circuit court on a stipulation of facts, which included the following: Plaintiffs, doing business as Largo Homes, were in the business of constructing houses. They built 56 homes on miscellaneous lots in Sterling township. The lots had been platted earlier by the subdivider and varied in size. The frontage of each lot was approximately 60 feet. In the course of obtaining building permits, Largo Homes was required to pay a privilege fee on each lot under an ordinance of the township admitted in evidence as Ordinance No 34. This ordinance was in addition to the usual and regular water ordinance. The only water system available in the subdivisions involved is that owned by the township. The zoning ordinance of the township required the use of the township water supply because the lots were less than 80 feet wide. Ordinance No 34 was adopted by Sterling township, a noncharter township, solely by resolution of the township board. It was duly published but no annual meeting was held to authorize its adoption; no vote by the general or affected electorate was held to approve the ordinance; it was not adopted pursuant to a petition by the electorate; no bond issue was ever authorized pursuant thereto, nor any special or general assessments levied in accord therewith. The "capital charge" had no relationship to the size of the lot being serviced, the size of the home thereon, the quantity of water required, the size of the main tapped in, or the valuation of the property serviced. All proceeds realized were used for the acquisition of capital equipment for the water system.

The matter was submitted to the trial court on the briefs and argument of counsel. The trial court

rendered an opinion finding the township had the authority to levy the privilege fee and, pursuant to that opinion, a judgment of no cause of action was entered in favor of defendant.

Plaintiffs are here on appeal raising these questions:

(1) May a noncharter township finance, wholly or in part, the expense of building or acquiring a water main and lateral system through flat-rate charges collected at inception from all lot owners building within the area served by the system, where the charges bear no relation to water consumed, cost of tapping in, area of the property served, value of the property or value of the construction thereon, and said flat-rate charges are in addition to consumption and tap-in charges?

(2) The powers of a noncharter township being limited both in general and as to taxation, may such township levy a flat-rate charge to finance building or acquiring a water main system?

(3) Did the revenue bond act of 1933, or any other statute, authorize levying the flat-rate charge here in issue and did defendant comply with the provisions of the revenue bond act?

(4) Was the charge reasonable?

(5) May the flat-rate charge here in issue be sustained as a tax or license fee?

(6) Is an ordinance levying the flat-rate charge here in issue discriminatory and confiscatory and contrary to the Federal and State constitutional requirements?

We shall discuss the third question first. The revenue bond act of 1933, as amended,[1] authorizes public corporations to purchase, acquire, construct, improve, enlarge, extend, or repair public improve-

---

[1] PA 1933, No 94, as amended (CL 1948 and CLS 1956, §§ 141.101–141.139, as last amended by PA 1959, No 78 [Stat Ann 1958 Rev and 1961 Cum Supp §§ 5.2731–5.2766(3)]).

ments, within or without their corporate limits, and to own, operate, and maintain the same; to condemn property for such public improvements; to provide for the imposition and collection of charges, fees, rentals, or rates for the service, facilities, and commodities furnished by such public improvements.

Section 4 of the act provides, "The powers in this act granted may be exercised notwithstanding that no bonds are issued hereunder."

Section 3 of the act provides in subdivision (d) that the term "governing body" shall be construed to mean in the case of a township, a township board. Subdivision (e) of that section specifies that the term "rates" shall be construed to mean the charges, fees, rentals, and rates which may be fixed and imposed for the services, facilities, and commodities furnished by any public improvement. Subdivision (f) provides the term "revenues" shall be construed to mean all the income derived from the rates charged for the services, facilities, and commodities furnished by any public improvement.

In the case of *Morley Brothers* v. *Township of Carrollton,* 305 Mich 285, this Court said (pp 288, 289):

"The title of the act is so worded as to give first to the municipalities, including townships, authority to acquire or construct certain improvements (including water supply systems) and then, as an aid to carrying out such projects, the power to issue self-liquidating bonds. We can find nothing in the act which provides that only the money raised by such bond issue may be used to pay for such construction. It would not even be necessary for the township to float such a bond issue if the township had funds on hand or other sources of income available with which to pay for the construction of the project.

"With authority being given to acquire or construct a public project as defined in the act, it must

necessarily follow that authority to pay for the project is at the same time granted."

This Court held in *Morley* that the township must pay for the materials since the expenditure of funds by a township for acquiring or constructing a water system is "expressly authorized 'by the provisions of law.' "

It was clearly the intention of the legislature to give townships the power and authority under the revenue bond act of 1933 to purchase, acquire, construct, improve, enlarge, extend, or repair a water supply system and a sewage disposal system, and to own, operate, and maintain the same, notwithstanding no bonds are issued in connection therewith.

Plaintiffs contend that nowhere do the statutes authorize the forced levy of capital funds from users and that in the absence of restraints there would be no limitation on townships from charging any amount they desired. They argue this is entirely contrary to the public policy of limitation of powers on the township. They further argue that in no event does the user pay the entire cost of the system in 1 swoop, as in the case now before the court.

It is conceded by plaintiffs that section 4 of the act indicates the powers of the act may be exercised notwithstanding that no bonds are issued.

It is the position of plaintiffs that "other methods" of raising funds contemplated by the revenue bond act would be through surplus, general revenues and taxes, special assessments or grants, whether Federal or State, and not through forced levies. No such limitation appears to have been placed under the statutory law of this State.

Section 21 of the revenue bond act (CL 1948, § 141.121 [Stat Ann 1958 Rev § 5.2751]), after stating that the rates for services furnished by any such

public improvement shall be fixed precedent to the issuance of the bonds, provides that the rates shall be sufficient to do certain things, and contains the following language:

"And to provide for such other expenditures and funds for the public improvements as the ordinance may require."

The flat-rate charge here provided as a "privilege fee" comes within the term "rates" defined in the revenue bond act of 1933, being within the terms "charges, fees, rentals and rates which may be fixed and imposed for the services, facilities and commodities furnished by any public improvement."[2]

The question of whether or not the charge is reasonable was discussed by the trial court in his opinion. He indicated that the reasonableness was not questioned by plaintiffs. However, it is argued here that it is questioned.

The record does not disclose any fact which would indicate that a charge of $150 per lot would be an unreasonable charge for such a facility or service. In the event a municipality did provide an unreasonable charge for such facility or service, unquestionably the courts would have a right to restrain its assessment. The question of what is a reasonable charge depends upon the circumstances and facts in the individual case. In the instant case we find nothing to indicate the fee was unreasonable.

It is not necessary to discuss whether or not the flat-rate charge may be sustained as a tax or a license fee in view of our holding that the flat-rate charge in this instance comes within the term of a charge for a facility or service.

Plaintiffs contend that if we hold the revenue bond act of 1933 authorizes such a charge, the municipality must comply with all the other provisions of the

2 CLS 1956, § 141.103 (Stat Ann 1958 Rev § 5.2733).—REPORTER.

revenue bond act, particularly that the entire cost of the system be determined at the outset and an estimate of revenue be made to determine whether the system in fact will be self-liquidating, and that prior to the adoption of the ordinance authorizing issuance of bonds an estimate of the cost of the system be made and an estimate of its period of usefulness be determined.

A careful reading of section 5 of the act (CLS 1956, § 121.105 [Stat Ann 1958 Rev § 5.2735]) indicates that these requirements come into existence only when bonds are issued. The section reads as follows:

"Whenever the governing body of any public corporation shall determine to purchase, acquire, construct, improve, enlarge, extend, and/or repair any public improvement and *to issue bonds under this act,* it shall first cause an estimate to be made of the cost and the period of usefulness thereof, and the fact that such estimate has been made and the amount and period of time thereof shall appear in the ordinance authorizing and providing for the issuance of the bonds." (Emphasis supplied.)

The remaining question raised by plaintiffs deals with whether the ordinance levying the flat-rate charge here in issue is discriminatory and confiscatory and contrary to the Federal and State constitutional requirements. Plaintiffs argue that since the ordinance applies only to those building after the effective date of the ordinance, it applies to a distinct and limited class of persons and, therefore, is discriminatory under the provisions of the Federal and State Constitutions.

The ordinance is not limited to a class after its effect. It applies to all parties building after the effective date of the ordinance.

Plaintiffs contend that the ordinance is unreasonable and confiscatory in that it bears no relation to

the water consumed; that it would exist even absent the consumption of water; that it bears no relation to the property serviced or to the extent of the area serviced; that it falls equally upon the small and the large user.

The record does not disclose that the ordinance authorizes such a large sum that it would prevent building in the subdivisions and, therefore, would confiscate the property of individuals without due process of law by preventing them from developing their property. On the contrary, it is evident that substantial homes were built even by the plaintiffs on most of the lots in the subdivisions. So far as this record is concerned the incidence of the charge does not indicate it is an unreasonable and confiscatory burden upon either the large or the small user.

While we agree the method of financing is unique, and should bear close scrutiny by the courts to protect users from unreasonable and burdensome costs, we conclude that the legislature authorized such a levy. On this record this Court cannot say the flat-rate charge is unreasonable.

The judgment of the lower court is affirmed. A public question being involved, no costs are allowed.

CARR, C. J., and DETHMERS, KELLY, BLACK, SMITH, and O'HARA, JJ., concurred.

SOURIS, J., did not sit.