## LAND *v.* CITY OF GRANDVILLE.

1. MUNICIPAL CORPORATIONS—SEWER RATES—UNIFORMITY.
   Sewer rates paid to city supplying the service pursuant to reasonable regulations need not be uniform nor be based upon the value of the property where the service is supplied.

2. SAME—SEWER RATES.
   What is a reasonable charge for sewer service supplied by a municipality is not subject to mathematical computation with scientific exactitude but depends upon a comprehensive examination of all factors involved.

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—MUNICIPAL CORPORATIONS—SEWER RATES.
   The equal protection clauses of the State and Federal Constitution do not take from the municipality the power to classify users of sewer service supplied by the municipal corporation, but admits of the exercise of a wide discretion, avoiding what is

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 38 Am Jur, Municipal Corporations §§ 565, 567.
   25 Am Jur 2d, Drains and Drainage Districts §§ 45, 47.
[3] 25 Am Jur 2d, Drains and Drainage Districts § 47.
[4] 25 Am Jur 2d, Drains and Drainage Districts § 41.
[5, 7–9] 38 Am Jur, Municipal Corporations § 343.
[6] 37 Am Jur, Municipal Corporations § 178.
[10] 5 Am Jur 2d, Appeal and Error § 1009.

done only when it is without any reasonable basis and there-
fore is purely arbitrary (US Const, Am 14; Mich Const 1963,
art 1, §§ 1, 2).

4. MUNICIPAL CORPORATIONS—CLASSIFICATION OF USERS OF SEWER
SERVICE.
    A classification of users of sewer service supplied by a munici-
    pality having some reasonable basis does not offend the equal
    protection clauses because it is not made with mathematical
    nicety or because in practice it results in some inequality (US
    Const, Am 14; Mich Const 1963, art 1, §§ 1, 2).

5. SAME—CLASSIFICATION.
    Classification of users of sewer service supplied by a municipality
    will be sustained if any state of facts can reasonably be
    conceived that would sustain it (US Const, Am 14; Mich Const
    1963, art 1, §§ 1, 2).

6. SAME—BURDEN OF SHOWING ARBITRARINESS.
    Burden of showing that classification of users of sewer service
    supplied by a municipality does not rest upon any reasonable
    basis is upon the party assailing it.

7. SAME—ORDINANCES—CLASSIFICATION.
    Classification of objects to which a municipal ordinance may
    be made applicable must be based on natural distinguishing
    characteristics and must bear a reasonable relation to the object
    of the ordinance (US Const, Am 14; Mich Const 1963, art 1,
    §§ 1, 2).

8. SAME—CLASSIFICATION—TRAILER PARK—MOTEL—SEWER SERVICE
RATES.
    A classification of users of sewer service supplied by defendant
    city whereby owner of resident trailer park and motel was
    charged according to each dwelling unit, the same as other
    multiple dwelling unit structures, rather than his single
    ownership of the property serviced by a single meter for water
    used in the premises, held, a justified basis for charging for
    service supplied (US Const, Am 14; Mich Const 1963, art 1,
    §§ 1, 2; Grandville Ordinances Nos 110, 110-B, 121).

9. SAME—SEWER SERVICE—CLASSIFICATION.
    The imposition of charges for sewer service supplied by a city
    based principally on the total of individual residents living in
    dwelling units in the city is a reasonable basis for classification
    of charges (US Const, Am 14; Mich Const 1963, art 1, §§ 1, 2;
    Grandville Ordinances Nos 110, 110-B, 121).

10. COSTS—PUBLIC QUESTION—SEWER SERVICE.
   No costs are allowed in action for declaration of rights with re-
      spect to charges for sewer service to trailer court and motel,
      a public question being involved.

Appeal from Kent; Vander Wal (John H.), J. Submitted Division 3 December 8, 1965, at Grand Rapids. (Docket No. 740.)   Decided April 12, 1966.

Complaint by Robert G. Land, Paul Land, Henry Land, and Jennie Land, doing business as Henry Land & Sons, against City of Grandville, a municipal corporation, for judgment declaring that defendant's sewer ordinances were invalid and that the rates for water and sewer services were unreasonable and arbitrary as applied to plaintiffs' business, and for an accounting of charges previously paid.   Judgment for defendant.   Plaintiffs appeal.   Affirmed.

*Vander Veen, Freihofer & Cook (Walter B. Freihofer,* of counsel), for plaintiffs.

*Bergstrom, Slykhouse, Shaw, Van Orden, DeYoung & Boyles (Richard M. Van Orden,* of counsel), for defendant.

HOLBROOK, J.   Plaintiffs-appellants are the owners of a 150-unit mobile trailer park and a 15-unit motel with a manager's apartment in connection situated in the defendant-appellee city of Grandville, a municipal corporation located in Kent county.

Plaintiffs brought suit in circuit court for declaratory judgment declaring defendant's "sewer ordinances" invalid, claiming the rates applicable to plaintiffs' motel and trailer home park were unrea-

sonable and arbitrary, and also for an accounting. After presenting testimony December 10, 1964, the parties signed an agreed statement of facts February 3, 1965, filed briefs, and submitted the case for decision. The trial judge ruled March 18, 1965, against plaintiffs' contentions and dismissed their complaint. From this judgment of dismissal, plaintiffs appeal.

A single question is presented by plaintiffs in their brief on appeal to-wit:

Does the sewer charge ordinance of the city of Grandville create an arbitrary and discriminatory classification of persons required to pay the quarterly "minimum fee," sewer use fee, contrary to the equal protection clauses of the Michigan Constitution[1] and 14th Amendment to the Federal Constitution?

The pertinent facts necessary for decision appear in the record to be as follows:

Upon petition of the State of Michigan in April, 1962, the Kent county circuit court enjoined the city of Grandville from disposing of its sewage in Grand River, and the city thus became obligated to build a sewage disposal plant. Construction of the plant was commenced in 1963, and completed in late 1964.

Plaintiffs' trailer park and motel are hooked into and are customers of defendant water and sewer systems. The trailer park and motel each have a single water meter.

On August 28, 1961, defendant city adopted Ordinance No 110 pertaining to charges for sewer services. On December 23, 1963, defendant city adopted Ordinance No 110-B which raised the minimum rates from $3 to $5 per quarter. On May 25, 1964, defendant city adopted "sewer Ordinance No 121." Article 8 of the ordinance imposes the same sewer

---

[1] See Const 1963, art 1, §§ 1, 2.—REPORTER.

rates as set forth under Ordinance No 110-B and the pertinent parts of said ordinance are as follows:

"Sec. 803(a). The rates and charges for each quarter shall be determined by each user's quarterly water use, the billing for which includes the month of January, and which said rates shall be as follows:

Sewage Service Rates
Quarterly Billing Period

| Quantity of Water Used | Rate |
|---|---|
| First 15,000 gallons | $5.00 (minimum charge) |
| Next 85,000 gallons | .25 per 1000 gallons |
| Next 200,000 gallons | .22 per 1000 gallons |
| Next 200,000 gallons | .20 per 1000 gallons |
| Over 500,000 gallons | .10 per 1000 gallons |

*       *       *

"(c). In the event two or more lots, parcels of real estate, residences, dwelling units, or buildings discharging sanitary sewage, water, or other liquids into the sanitary sewage system of the city either directly or indirectly, are users of water and the quantity of water is measured by a single water meter, then, in each case for billing purposes, the minimum charge for sewer rates and charges shall be multiplied by the number of lots, parcels of real estate, residences, dwelling units, or buildings served through the single water meter."

It is the application of subparagraph (c) quoted above (which is identical in Ordinance No 110 and Ordinance No 110-B) to the property of the plaintiffs that forms the basis for the controversy in these proceedings. The sewer lateral and interceptor system located within the property lines of the plaintiffs and servicing the trailer park were installed by them at their expense the same as required by the defendant city of all developers of any plat or subdivision.

Plaintiffs could have had separate meters installed for each of the 150 trailer units and each of the 16 motel units upon payment of connection charges as provided in said ordinance.

The power of the defendant city to own and operate a sanitary sewer system and by ordinance to impose charges, rentals or rates for such service is not questioned by plaintiffs.

The trailers using the park are typically equipped with a toilet, bathing accommodations, and kitchen sinks. These trailers are not transit, but usually stay six months or longer. Plaintiffs restricted the number of children per trailer to two. The average occupancy per trailer is about 2.1 persons. Each trailer is connected by sewage lateral to a gathering system of interceptors running throughout the trailer park, which interceptor system then connects into the trunk sewer of the city at plaintiffs' property line. The trailer park has a near 100% occupancy.

Each unit of the motel has a toilet, shower, and sink and sleeping accommodations and contributes a daily laundry of toweling and linen. The motel has a 65–70% occupancy rate.

By reason of the ordinance the trailer park has been charged a minimum quarterly sewage rental of $5 per quarter for those trailer spaces actually occupied by trailers during each billing period. The motel has been charged for 16 units each quarter on a minimum charge basis.

The trailer park has not paid more than a minimum rental as the water used per unit for the winter control period has been about 10,000 gallons, however, their maximum use of water per quarter in the summer has approached 50,000 gallons of water per trailer. This is also true for the charges of the motel units, as its winter average has been about

5,000 gallons of water per unit with the summer quarter approaching 40,000 gallons of water used per unit.

The sewage plant of defendant city was designed to accommodate the entire population of the city, but at the time of this lawsuit, only about 1/3 of the area was so serviced. The income from rental or charges for services of the sewer system were not enough to defray the cost of operations and the city has imposed a 3-mill ad valorem tax against all of the property of the city to supplement the sewer systems income.

All of the multiple dwelling unit properties in defendant city are charged the minimum rate for sewer services on a per-unit basis the same as plaintiffs' property. These include two other motels and four separate multiple dwelling complexes of apartment buildings.

Billings by defendant city for sewer service to plaintiffs for the trailer park and motel is by way of one bill for each quarter. The meter is read and then the gallonage divided by the number of units occupied to ascertain the gallonage used by each unit. Always the minimum has been charged per unit. The cost of meter reading and billing is no greater for the trailer park than for a factory or business building. The cost of processing the sewage is no greater from the trailer park than a like amount from a business or commercial plant, however, under certain conditions, sewage from the commercial plants must be processed before being placed in the sewer system.

The basis upon which defendant city justifies the minimum charge to dwelling units is contained in the testimony of Mr. Raymond Bruggink, consulting engineer to the city of Grandville. His testimony is to the effect that the design and construction of the sewage disposal system for the city was

the population unit. The capacity of the sewage plant was predicated upon the average amount of contribution by the average individual residing in the community. That the presence in the community of business or commercial operations such as laundromats, schools, and businesses was of little significance and had relatively little bearing on considerations of capacity or maintenance for the disposal system because as stated in his words:

"*A.* Because we have made our design on the basis of the population equivalent which includes the kitchen waste, sanitary waste from the individual, and also the laundry waste, whether it is done at home or at a laundromat would not affect our load on the sewage materially."

The domestic unit composed of individuals according to Mr. Bruggink was the reason for the classification for rate charges for use of the sewer system contained in the defendant city ordinance authorizing minimum charges for each individual residence or dwelling unit, whether it be a house, a trailer home, an apartment, or motel room or rooms. In the city of Grandville, the average family unit was 3.5 persons.

Plaintiffs maintained that their motel and trailer home park constitute businesses or commercial enterprises and by reason of their using only one water meter for each business, should be treated the same as a laundromat, factory, or other business in the city with one minimum rate plus charges for excess use of water at the reduced rate. If plaintiffs' position is tenable, its sewer rentals would be about 1/3 the fees computed under the said ordinance.

The rule governing a municipality's right to regulate rates for its public utilities is dealt with in the early case of *Preston* v. *Board of Water Commis-*

*sioners of Detroit* (1898), 117 Mich 589, p 598, wherein it is stated:

"It is true, if he is in the water district, he is entitled to the use of the water by complying with the regulations of the water board; it is also true these regulations must be reasonable; but it is not true they must be uniform or that they must be based upon the value of the property where the water is used."

This rule is further explained in the case of *Township of Meridian* v. *City of East Lansing* (1955), 342 Mich 734, wherein Mr. Justice TALBOT SMITH stated on p 749 as follows:

"The word 'reasonable' with respect to rates charged by utilities is a word of the most universal employment. It may be provided by ordinance, statute, or constitution (*e.g. Simons* v. *City Council of Charleston,* 181 SC 353 [187 SE 545]) that rates shall be 'reasonable' or 'fair and reasonable.' Moreover, should the question of rate arise on a contract implied in law, the judicial requirement is that the rate to be paid shall be 'reasonable.' *City of Detroit* v. *City of Highland Park,* 326 Mich 78, 100. It may also be employed (as in the case at bar) in a contract. The determination of its meaning, in any case, is not subject to mathematical computation with scientific exactitude but depends upon a comprehensive examination of all factors involved, having in mind the objective sought to be attained in its use."

The standards applicable in evaluating the reasonableness of a municipality's system of classification are set forth by our Supreme Court in *Cook Coffee Co.* v. *Village of Flushing* (1934), 267 Mich 131, where the Court citing the earlier Michigan case of *Naudzius* v. *Lahr* (1931), 253 Mich 216 (74 ALR 1189, 30 NCCA 179), stated on p 134 as follows:

"The standards of classification given in *Lindsley*
v. *Natural Carbonic Gas Co.*, 220 US 61, 78 (31 S Ct
337, 55 L ed 369, Ann Cas 1912C, 160), were quoted
by this court in *Naudzius* v. *Lahr, supra,* at pp 222,
223:

" '1. The equal protection clause of the Four-
teenth Amendment does not take from the State the
power to classify in the adoption of police laws, but
admits of the exercise of a wide scope of discretion
in that regard, and avoids what is done only when
it is without any reasonable basis and therefore is
purely arbitrary.  2. A classification having some
reasonable basis does not offend against that clause
merely because it is not made with mathematical
nicety or because in practice it results in some in-
equality.  3. When the classification in such a law
is called in question, if any state of facts reasonably
can be conceived that would sustain it, the existence
of that state of facts at the time the law was en-
acted must be assumed.  4. One who assails the
classification in such a law must carry the burden
of showing that it does not rest upon any reason-
able basis, but is essentially arbitrary.' "

This rule was considered recently in a municipal
rate case involving a sewer in *Beauty Built Con-
struction Corporation* v. *City of Warren* (1965), 375
Mich 229, wherein Mr. Chief Justice T. M. KAVA-
NAGH on pp 235, 236, stated as follows:

"This Court has repeatedly held that classifica-
tion of objects to which a municipal ordinance may
be made applicable *must be based on natural dis-
tinguishing characteristics and must bear a reason-
able relation to the object of the ordinance.* See
*Palmer Park Theatre Company* v. *City of Highland
Park,* 362 Mich 326; *Mulloy* v. *Wayne County Board
of Supervisors,* 246 Mich 632.

"Where an ordinance fails to include and affect
alike all persons of the same class, and extends im-
munities or privileges to one part and denies them

to others of like kind by unreasonable or arbitrary classification, the same is contrary to the equal protection guarantees of the State and Federal Constitutions. See *Haynes* v. *Lapeer Circuit Judge,* 201 Mich 138.    *    *    *

"In *Seltzer* v. *Sterling Township,* 371 Mich 214, this Court held that an ordinance imposing privilege fees on all homes connecting to the water system subsequent to the adoption of the ordinance not to be unconstitutional; no arbitrary classification or exemption was attempted by the ordinance in *Seltzer* as in the instant case."

There does not appear to be precedent in the decisions of our State under identical or similar fact situations with the case at hand. We do have the benefit of recent decisions from other jurisdictions where our question or a similar one is presented. The case with the fact situation most similar to our case appears to be that of *Caldwell* v. *City of Abilene* (Texas Civ App, 1953), 260 SW2d 712. The city of Abilene enacted a new sewer ordinance which provided in part (p 713):

" 'In all cases where more than one living or business unit is supplied through one meter, a minimum charge will be made for each living unit or business unit supplied through such meter. If two or more living or business units are supplied through one meter, a minimum charge will be made each month for each unit regardless of whether units are occupied.' "

A group of apartment owners who had previously enjoyed a minimum rate as applied to each apartment building regardless of the number of living units therein, objected, contending any differentiation in water rates must be based upon the economical factor of cost and any classification for rate purposes not so based is arbitrary and unreason-

able. The court stated beginning at p 714, as follows:

"We cannot agree with this contention. Many factors are properly considered in determining the reasonableness of a classification and there is no one factor which is of itself controlling to the exclusion of all others. Each case must be decided upon its own facts and the burden of proof is on the party claiming an unreasonable discrimination. *Ford* v. *Rio Grande Valley Gas Co.*, 141 Tex 525 (174 SW2d 479).

"It is well established that a municipal corporation operating its water works or other public utility has the right to classify consumers under reasonable classification based upon such factors as the cost of service, the purpose for which the service or product is received, the quantity or amount received, the different character of the service furnished, the time of its use or any other matter which presents a substantial difference as a ground of distinction. 73 CJS, Public Utilities, § 27, p 1049, 43 Am Jur, Public Utilities and Services, § 178, p 689; *American Aniline Products, Inc.*, v. *City of Lock Haven*, 288 Pa 420 (135 A 726, 50 ALR 121). * * *

"*The classification of apartment houses under a residential classification based for rate purposes upon consuming units is not, in our opinion, without reasonable basis and justification. Such users constitute a type of class substantially different and distinct from other users. This is sufficient basis for the classification.* * * *

"If appellants should prevail in this case, there would be a discrimination against consumers in single unit dwellings. Not every discrimination, however, is condemned, but only a discrimination that is arbitrary and without a reasonable fact basis or justification. *The discrimination in this case is not arbitrary. On the contrary, it is supported and justified by a factual basis for classification and by substantial evidence which justifies the charges*

*made to that class of users. Such discrimination as*
*there is need not be suffered by appellants. They*
*have the right to have additional meters installed*
*so that charges may be made directly to each house-*
*hold unit."* (Emphasis supplied.)

Also, see, *Lewis v. Mayor & City Council of Cum-*
*berland* (1947), 189 Md 58 (54 A2d 319); *Brooklyn*
*Apartments, Inc.,* v. *Mayor & City Council of Balti-*
*more* (1947), 189 Md 201 (55 A2d 500); *City of*
*Clovis* v. *Crain* (1960), 68 NM 10 (357 P2d 667, 88
ALR2d 1243); and, *Knotts* v. *Nollen* (1928), 206
Iowa 261 (218 NW 563).

Classification of consumer units rather than to
ownership of properties was upheld by the Court in
the case of *Brown* v. *Pennsylvania Public Utility*
*Commission* (1943), 152 Pa Super 58 (31 A2d 435),
wherein the court stated:

"The fact that the owner of a property is the
sole contracting party for water is not controlling
in determining whether the consumer is entitled to
a rate based on a single unit. Nor may the amount
of water used be the correct criterion to determine
whether a single unit rate is applicable. The use
made of the property is an important factor to be
considered in determining the proper applicable
rates. Classification by consumer units rather than
according to ownership of properties was sustained
by this court in *Hunter* v. *Public Service Commis-*
*sion,* 110 Pa Super 589, 597 (168 A 541)."

In 12 McQuillin, Municipal Corporations (3d ed),
1965 Cum Supp, § 35.37, p 104, it is stated in part
as follows:

"Variances in rates must have a rational basis
and not be purely arbitrary, and must be fair and
equal to similarly situated properties, that is, there
must be uniformity within the class.[2] Held not dis-

---

[2] *Town Board of Town of Poughkeepsie v. Poughkeepsie,* 22 App Div
2d 270 (255 NYS2d 549).

criminatory is an ordinance providing that each separate house, residence, apartment building, structure, trailer house and/or mobile home shall have a separate water meter or pay a separate monthly minimum charge for water, while classifying such businesses as hotels and motels as single unit users subject to assessment of one minimum water rate per month."[3]

Appellants cite in their brief the case of *Kliks v. Dalles City* (1959), 216 Or 160 (335 P2d 366), as authority for their position that the defendant city of Grandville's sewer ordinance as applied to them is arbitrary and unreasonable. We quote from said opinion as follows (pp 164, 171, 172, 175, 176, 181):

"The ordinances in question, which establish the water rate structure, are challenged on two principal grounds; (1) that the inclusion of rooming houses, boarding houses, motels, hotels and trailer courts under a classification distinct from, and under a more favorable rate structure than, apartment houses constituted an unreasonable discrimination, and (2) that the minimum service charge applicable to apartment houses was based upon the use of a quantity of water which so far exceeded the actual use of the water by the plaintiffs' tenants that the charge was arbitrary, unreasonable and confiscatory. * * *

"'The capital investment necessary to serve a customer is not limited by his average consumption, but must include water supply and mains sufficient to supply his *maximum* use.' *Lewis v. Mayor and City Council of Cumberland,* 189 Md 58, 71 (54 A2d 319, 325). * * *

"In arriving at the estimated average amount of water which would be consumed in all apartments as a class, it would be permissible to take into consideration the use of water for the irrigation of apartment house lawns, common laundry facilities,

---

[3] *Kermit v. Rush* (Tex Civ App), 351 SW2d 598.

automobile washing facilities and other types of use which some, but not all, apartment houses will require. If the inclusion of such demands in computing the average increased the minimum set by the city, the plaintiffs could not complain merely because they did not happen to need water for all such purposes. The establishment of a rate structure does not require that the components used in creating it fit all persons within the class exactly alike. * * *

"It is our conclusion, then, that the plaintiffs have not shown that the multiple minimum rate is unreasonable merely because it sets a minimum monthly apartment unit charge for 7,500 gallons of water. * * *

"It is urged that even though the rates applicable to them are regarded as reasonable in terms of their use and demand for water, and that such rates may be reasonable vis-a-vis other apartment owners, there is undue discrimination in classifying differently in the rate structure the use of water for apartment house purposes and the use of water in hotels, motels and other similar uses. It will be noted that under Ordinance 721 the minimum charge for rooming houses, boarding houses, hotels, motels and trailer courts with facilities for the accommodation of more than four persons is $2 per month, which entitles the owner to 7,500 gallons of water during the month. The minimum charge is not made separately for each unit under this classification, the user paying for the water on the basis of metered rates after the minimum of 7,500 gallons is consumed. * * *

"In *Knotts v. Nollen* (1928), 206 Iowa 261 (218 NW 563), the city established a schedule of rates which classified apartment house units as separate residences. This resulted in denying to apartment house owners the benefit of a sliding meter rate which was given to hotels, department stores and other commercial users. The court held that the classification did not constitute an unlawful discrim-

ination against apartment owners. In doing so, the
court noted that water consumers in an apartment
house are the families and not the proprietor and
that to classify an apartment house as a quantity
consumer would be to discriminate in favor of such
families and against families occupying dwellings
under separate roofs. It was also noted that the
city had no control over the charges which the
apartment house owner could impose upon the ten-
ants for the use of the water.

"This argument is deceptively appealing. Un-
questionably, there are similarities between the
manner in which apartment tenants and those in
separate dwellings use water. But the important
consideration is not the similarities between these
two types of use of water, but the differences, if
any, between apartment houses and hotels, motels,
and other commercial users to whom a lower rate
is charged. * * *

"The trial court held that the classification of the
plaintiffs' apartment house as an aggregation of
residential living units rather than as a single com-
mercial unit was valid, but that the unit rates under
Ordinances No 706 and No 721 as they applied to
plaintiffs' property were unreasonable. It is our
conclusion that the rates charged the plaintiffs were
not shown to be so excessive as to be unreasonable,
but that they are unreasonable because the classifi-
cation is arbitrary."

The issue upon which plaintiffs in the *Kliks Case,
supra,* prevailed was contained in their claim that
the inclusion of rooming houses, boarding houses,
motels, hotels and trailer courts under a classifica-
tion distinct from and under a more favorable rate
structure than apartment houses constituted unrea-
sonable discrimination. In our case the city of
Grandville's ordinance treats all of these types of
dwelling units exactly the same.

Modern trailer parks afford modern living ac-
commodations for many of the families in America

today, and should not be classified other than dwellings or residences. The fact that there is only one meter servicing the 150 trailers is a convenience and saving of expense to the trailer owners as well as the city of Grandville. The defendant city of Grandville's basis of operation and rental charges to pay the costs of operation is founded principally on the total of individual residents living in dwelling units in the city. This we find is a reasonable basis for the classification contained in the sewer ordinance in question and is not arbitrary or unreasonable in its application to plaintiffs' properties.

*Arguendo,* each unit of the motel and each trailer home pays not one penny more than any of its counterparts any place in the city of Grandville for sanitary sewage services to-wit: less than $1.70 per month. This certainly cannot be considered more than the fair share properly to be allocated to these individuals and families using the sewer facilities of defendant city.

We conclude that the sewer ordinance of the city of Grandville is valid and constitutional.

Judgment affirmed, no costs, a public question being involved.

FITZGERALD, P. J., and T. G. KAVANAGH, J., concurred.