NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0988n.06

No. 10-2644

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Sep 07, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BROWN BARK I, L.P., )<br>)<br>    Plaintiff-Appellant, )<br>)<br>v. )<br>)<br>TRAVERSE CITY LIGHT AND POWER )<br>DEPARTMENT, )<br>)<br>    Defendant-Appellee. )<br>) | ON APPEAL FROM THE UNITED<br>STATES DISTRICT COURT FOR<br>THE WESTERN DISTRICT OF<br>MICHIGAN<br><br>OPINION |

Before: SUHRHEINRICH, STRANCH, and DONALD, Circuit Judges.

DONALD, Circuit Judge. Plaintiff-Appellant Brown Bark I, L.P. ("BBI") brought suit against Traverse City Light & Power ("TCL&P") in the Western District of Michigan pursuant to 28 U.S.C. § 1332, seeking a declaration that TCL&P has no right under the Michigan Revenue Bond Act ("RBA") to assert tax liens; BBI also sought to quiet title and alleged, among other things, slander of title. BBI and TCL&P filed cross motions for summary judgment. The district court denied BBI's motion and granted TCL&P's motion, holding that TCL&P has a valid tax lien pursuant to the RBA. BBI now appeals, alleging the district court erred in applying the RBA. For the following reasons, we affirm.

I.

BBI owns Brewery Creek Office Condominium Development ("the Property") in Leelanau County, Michigan. TCL&P is a municipally-owned utility provider that services the area in which the Property is located. Brewery Creek Development ("BCD") was formed to develop the Property. On May 21, 2003, Republic Bank issued BCD a loan to develop the Property. Republic's mortgage was recorded on May 28, 2003. Brewery Creek Center Condominium Association ("BCCCA") served as the Property's owners' association.

In April 2004, BCCCA and TCL&P entered into an agreement (the "Lighting Agreement"), whereby TCL&P advanced BCCCA money to install light fixtures in the parking lots, driveways, and common areas of the Property. TCL&P hired a third-party contractor to install the lighting fixtures. The Lighting Agreement did not address the future sale of electricity to BCD. The Agreement established that the BCCCA would repay the amount advanced for the fixtures over a 10-year schedule. The Lighting Agreement also provided that TCL&P could pursue real estate tax liens on the Property in the event BCCCA failed to pay the amount advanced by TCL&P. BCD and three condominium property owners consented in writing (the "Consents") to allow TCL&P to impose a tax lien in accordance with Mich. Comp. Laws § 141.121 in the event BCCCA failed to pay. Traverse City has incorporated Mich. Comp. Laws § 141.121(3) into its Code of Ordinances to ensure that it could avail itself of the provision permitting imposition of a tax lien. The Consents were recorded with the Leelanau County Register of Deeds in July 2004. The mortgage lender,

Republic Bank, did not consent to a lien being placed on the Property, and, in fact, the mortgage agreement with Republic Bank expressly prohibited the imposition of a lien on the Property.

In March 2007, BBI purchased Republic's right, title, and interest on the mortgage and on the Property. The assignment was recorded on April 19, 2007. BCD defaulted on the mortgage. BBI foreclosed on the mortgage, and on November 21, 2008, BBI bought the Property at the foreclosure sale. The Property was not redeemed and the Sheriff's Deed was delivered to BBI.

One week prior to the foreclosure sale, TCL&P instituted a state action against BCD and BCCCA claiming both entities had breached the Lighting Agreement by failing to repay the funds TCL&P advanced for the lighting fixtures. TCL&P did not join BBI in the action. The state court entered a consent judgment against BCD for breach of contract. Because BBI now owned the Property, once it learned of the state court action, it filed a motion to intervene. The motion was denied. TCL&P admitted that "the [j]udgment may have gone too far[,]" and counsel for TCL&P was willing to consent to an amended judgment that removed language allowing TCL&P to enforce the debt as a tax lien on the Property. The state court ultimately did not remove this language from the judgment and simply awarded TCL&P monetary damages against BCD. TCL&P has not relinquished its claim that it has authority to impose a tax lien.

BBI then filed suit against TCL&P challenging TCL&P's right to impose a lien on the Property. The parties filed cross-motions for summary judgment. Holding that TCL&P may impose a tax lien on delinquent charges pursuant to the RBA, the district court found in favor of TCL&P and

granted its motion for summary judgment on all claims. BBI now appeals, claiming that the district

court erred in applying the RBA to the charges at issue, that BBI's foreclosed mortgage extinguishes

any lien TCL&P had on the property, and that TCL&P is liable for slander of title. The City of

Grand Rapids, Michigan filed an *amicus-curiae* brief in support of TCL&P.

II.

Holding that the RBA applies, the district court granted TCL&P summary judgment on all

claims. We review a district court's grant of summary judgment de novo. *Blackmore v. Kalamazoo

Cnty.*, 390 F.3d 890, 894-95 (6th Cir. 2004). Summary judgment is proper where there is no genuine

dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

56(a). We view the record in the light most favorable to the nonmoving party and all reasonable

inferences will be drawn in favor of that party. *Blackmore*, 309 F.3d at 895.

A.

BBI argues that the transaction at issue falls well outside the scope of the RBA, and thus the

district court erred in applying the law to the facts of this case. In advancing this argument, BBI

contends that in order for the RBA to apply TCL&P must have provided services through a "public

improvement." BBI asserts that providing electrical current to the Property through TCL&P's utility

system *does* fall within the scope of the RBA. It maintains, however, that providing financing for

the construction of the light fixtures on private property does *not* fall within the RBA's definition

of a "public improvement." In response, TCL&P asserts that because the RBA broadly defines the

term, the district court did not err in granting summary judgment when it held that the installation

of the street lighting falls within the RBA's definition of a "public improvement." The RBA

provides that:

> Any public corporation is authorized to purchase, acquire, construct, improve, enlarge, extend or repair 1 or more public improvements and to own, operate and maintain the same, within or without its corporate limits, and to furnish the services, facilities and commodities of any such public improvement to users within or without its corporate limits.

Mich. Comp. Laws § 141.104. A "public improvement," in the context of this case, is broadly

defined to include "utility systems for supplying light, heat, or power, including plants, works,

*instrumentalities, and properties used or useful in connection with those systems*[.]" Mich. Comp.

Laws § 141.103(b) (emphasis added). Where charges for a "public improvement" go unpaid, the Act

further provides the public corporation with a remedy to collect delinquent payments:

> Charges for services furnished to a premises may be a lien on the premises, and those charges delinquent for 6 months or more may be certified annually to the proper tax assessing officer or agency who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered, and the charges shall be collected and the lien shall be enforced in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes.

Mich. Comp. Laws § 141.121(3).

BBI cites several Michigan cases for the proposition that the service provided must involve

the utilization of the public improvement, maintaining that TCL&P does not meet this criterium.

BBI references the Michigan Supreme Court's decision in *City of North Muskegon v. Bolema Constr. Co.*, where the court held:

> In our opinion a lateral consisting of sewer pipe and fittings running from a sewer main to the property line of the use is a necessary part of the sewerage system and as such is a service or facility within the meaning of the act. The fact that there is a non-recurring charge for this connection does not detract from the fact that the connection is a service or facility, which the Department of Public Service must provide.

56 N.W.2d 371, 374 (Mich. 1953).

BBI also cites the Michigan Supreme Court's holding in *Seltzer v. Sterling Twp.*, 123 N.W.2d 722 (Mich. 1963). In that case, the court applied the RBA where residents were charged a "privilege fee" so that the Township could acquire capital equipment for the water system. This court, in *City of Detroit, By and Through Detroit Water and Sewerage Dep't v. Mich.*, 803 F.2d 1411 (6th Cir. 1986), held that the Wayne County Road Commission was subject to the RBA where its storm water runoffs flowed into the City's treatment system. The court reiterated that "a benefit is necessarily conferred upon those properties which enjoy storm water runoff into a municipal sewer system." *Id.* at 1420. The rationale for this decision stems from the fact that the Wayne County Road Commission needed appropriate drainage to keep the roads safe for public travel and that without the help of the sewage system, this would not be possible. *Id.* at 1421.

All of the aforementioned cases cited by BBI seem to suggest that the RBA encompasses a broad class of cases ranging from sewer lines running to and from a private residence, to the benefits an entity and the public receive from a city's drainage system. However, BBI insists that the RBA

does not apply because the installation of street lights on private property, in and of itself, does not utilize TCL&P's system for a benefit conferred upon the public.

In response, TCL&P and the City of Grand Rapids contend that the RBA does apply, as it was designed to be liberally construed. The RBA declares:

> This act, being necessary for and to secure the public health, safety, convenience and welfare of the counties, cities, incorporated villages, townships, school districts, port districts, and metropolitan districts of the state of Michigan, *shall be liberally construed to effect the purposes hereof.*

Mich. Comp. Laws § 141.134 (emphasis added). TCL&P argues that the charges incurred for installing the light fixtures must fall under the definition of "public improvement." The district court did not expressly analyze what the "public improvement" is in this case. Instead, the court's analysis focused on how "charges" and "rates" for services differed within the meaning of the RBA. The court reasoned that where "charges" and "rates" were two separate words listed in the statute, their meanings were intended to be distinct from each other, and, as such, charges are not limited to the rates charged to customers for electrical current. Therefore, the charges incurred from the installation of the lighting fixtures could very well be subject to TCL&P's lien in accordance with Mich. Comp. Laws § 141.121(3). We agree.

As the district court further pointed out, the RBA defines "rates" as "the charges, fees, rentals, and rates that may be fixed and imposed for *the services, facilities, and commodities furnished by a public improvement.*" (emphasis added). TCL&P's utility system is undoubtedly defined as a "public improvement" by the Act, and TCL&P's system provides the *service* of

electricity through a *facility* such as a light fixture. *See Bolema*, 56 N.W.2d at 374 (finding that the sewer lines running to property lines were "facilities" within the meaning of the Act.) (emphasis added). Further, Mich. Comp. Laws § 141.103(b) indicates that "'public improvement' means the whole *or a part* of *any* of these improvements or of *any combination* of these improvements or *any interest or participation* in these improvements." (emphasis added). Given the foregoing, the statute, liberally construed, necessarily includes light fixtures that TCL&P funded and in which it had an interest.

Moreover, while TCL&P incorrectly asserts that *Thomson v. City of Dearborn*, 79 N.W.2d 841 (Mich. 1956), stands for the proposition that the RBA resolutely applies to "public improvements" on private property,[1] the RBA does not specifically state whether it applies only to public property. Further, the RBA does not expressly state that light fixtures on private property are *prohibited* from inclusion, and, as the City of Grand Rapids points out, Michigan state courts have upheld the RBA's application where the RBA does not expressly limit an action. *See Oakland Cnty. v. City of Detroit By & Through Bd. of Water Comm'rs.*, 265 N.W.2d 130, 133 (Mich. Ct. App. 1978); *see also Sabaugh v. City of Dearborn*, 185 N.W.2d 363, 365 (Mich. 1971).

BBI's argument that TCL&P used a third-party contractor to install the fixtures is also unavailing; even BBI's brief illustrates that contractors can competitively bid on public

---

[1] In *Thomson*, the court cites a case where the municipal parking system assessed a use charge for on-street and off-street parking. TCL&P incorrectly states that the off-street parking was on private property. BBI correctly points out that all of the property in *Thomson*, the on-street and off-street parking, was public property, and thus, that case is distinguishable from the case at hand.

improvements. Moreover, the RBA itself permits contractors to perform work on public improvements. *See* Mich. Comp. Laws § 129.201.

The City of Grand Rapids urges us to affirm summary judgment on this issue, advancing that it is "critical that infrastructure improvements be paid in order to perpetuate the operation of the system." Construing the statute liberally, the light fixtures at issue certainly fall within the scope of the RBA. The district court did not err in granting TCL&P's motion for summary judgment because, as a matter of law, the RBA governs the delinquent charges at issue.

B.

The district court determined that in applying the RBA, "[M.C.L.] § 141.121(3)[] treats delinquent government-utility charges the same as delinquent property taxes for purposes of lien priority and collection." On appeal, BBI does not dispute that the Act operates in this manner. BBI argues, however, that TCL&P's claim of a valid lien is premised on having valid signed Consents, not on the application of the RBA. They assert that TCL&P's lien on the Property is not a first priority lien because the Consents were recorded after Republic Bank's mortgage. Thus, when BBI foreclosed on Republic Bank's mortgage, BBI took the mortgage free and clear of all liens on the Property.

BBI cites Mich. Comp. Laws § 600.3130, which provides:

Unless the premises or any parcel of them are redeemed within the time limited for redemption the deed shall become operative as to all parcels not redeemed, and shall vest in the grantee named in the deed, his heirs, or assigns all the right, title, and interest *which the mortgagor had at the time of the execution of the mortgage* or at any time thereafter.

(emphasis added). Thus, BBI argues that because the Property was not redeemed, and because at the time Republic Bank executed its mortgage TCL&P did not have a lien on the property, BBI is not subject to the lien either.

TCL&P responds that because the RBA does apply to the charges incurred in this case, the lien automatically came into being as provided by statute. Where the RBA treats the unpaid charges as a tax delinquency, it is necessary to look to Michigan's General Property Tax Act (GPTA). 2011 WL 1822454, at *2 (Mich. OAG No. 7258). The GPTA provides as follows:

> The people of this state have a valid lien on property returned for delinquent taxes, *with rights to enforce the lien as a preferred or first claim on the property*. The right to enforce the lien is the prima facie right of this state and shall not be set aside or annulled except in the manner and for the causes specified in this act.

Mich. Comp. Laws § 211.60a(4) (emphasis added). TCL&P has the better argument here.

The statutory language makes clear that if a lien is placed upon property in accordance with the RBA, the lien is preferred as to all other claims, or "first claim," as stipulated by the GPTA. Thus, because the RBA applies to the charges incurred in this case, TCL&P has a first priority lien that arose by operation of law as provided by statute and was therefore never junior to BBI's mortgage. As such, summary judgment was appropriate on this claim.

## C.

Lastly, BBI claims that TCL&P is liable for slander of title because it maintained an invalid lien on the Property. Under Mich. Comp. Laws § 565.108:

> No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

To establish a claim of slander of title, BBI must show falsity, malice and special damages. *Sullivan v. Thomas Org., P.C.*, 276 N.W.2d 522, 525 (Mich. Ct. App. 1979). Because TCL&P has a valid tax lien pursuant to the RBA, BBI cannot satisfy the falsity element. Thus, the district court properly held BBI failed to state a claim for slander of title.

## III.

Given the foregoing, we **AFFIRM** the district court's grant of summary judgment to TCL&P in all respects.