## MONTICELLO HOUSE, INC., v. CALHOUN COUNTY

1. STATES—COUNTIES—STATE, PUBLIC FUNDS—NOT SYNONYMOUS.

   Public funds are not synonymous with state funds for public funds is a general term and may or may not specifically include state funds.

2. COUNTIES—INDIGENT RESIDENTS—MEDICAL CARE FACILITIES—EXPENDITURE OF PUBLIC FUNDS.

   A county is not expressly obligated under the Social Welfare Act to appropriate and to expend public funds for a medical facility for indigent residents as the statute providing for county medical care facilities is permissive, not compulsory (MCLA §§ 400.58–400.58[c]).

3. STATES—COUNTIES—PAYMENT OF STATE FUNDS—LOSS OF IDENTITY.

   State funds, when paid to a county, lose their identity as state funds.

4. PARTIES—REAL PARTY IN INTEREST—STATE, PUBLIC FUNDS—PROFIT-ORGANIZED CORPORATIONS—COURT RULE.

   A profit-organized corporation had legal standing as a sole party plaintiff and county taxpayer to enjoin defendant county from expending public funds for a medical care facility for indigent residents where no mandatory legislation obligated the county to establish such a facility and the state did not reimburse the county for it, and state funds were involved as contemplated by the real party in interest rule (GCR 1963, 201.2[3]).

5. COUNTIES—BOARD OF SUPERVISORS—LEASING BUILDINGS—MEDICAL CARE FACILITY.

   The Social Welfare Act permits a county to locate a medical care facility in either an existing building or in a newly erected building and, consequently, a county board of supervisors may lease a building for the purpose of operating a medical care facility (MCLA § 400.58).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 42 Am Jur, Public Funds § 2.
[2, 4, 5, 7] 42 Am Jur, Public Funds § 73.
[4] 20 Am Jur 2d, Counties § 78 (Supp).
[6] 20 Am Jur 2d, Counties § 36 (Supp).

6. Counties—Boards of Supervisors—Real Estate—Purchase, Lease—General Powers.

> Real estate, as used in a statute empowering county boards of supervisors to purchase or lease any real estate necessary for any county building, includes the lease of land with an existing structure to be used for a county building (MCLA § 46.11).

7. Counties—Boards of Supervisors—Medical Care Facility—Power to Lease.

> Defendant county, through its board of supervisors, had express statutory power to lease a privately owned medical care facility to operate for its indigent residents (MCLA §§ 46.11, 400-.58).

Appeal from Calhoun, Richard E. Robinson, J., presiding. Submitted Division 3 November 6, 1969, at Grand Rapids. (Docket No. 5,963.) Decided November 25, 1969.

Complaint by Monticello House, Inc., a Michigan corporation, against Calhoun County to enjoin the transferring of patients from plaintiff's nursing home into county-leased nursing facilities, the payment of public funds for that purpose, and for a declaration that the county's lease was void. Walter Byron Medical Care Facility, Inc., a Michigan corporation, and the county's lessor, granted leave to intervene. Judgment for plaintiff. Defendants appeal. Affirmed in part and reversed in part.

*Fraser, Trebilcock, Davis & Foster* (*Ronald R. Pentecost* and *Peter L. Dunlap,* of counsel), for plaintiff.

*John M. Jereck,* Prosecuting Attorney, for defendant County of Calhoun.

*Allen, Worth & Calderone,* for intervening defendant Walter Byron Medical Care Facility, Inc.

Before: Fitzgerald, P. J., and R. B. Burns and Bronson, JJ.

Fitzgerald, P. J.   This appeal arises from an action by Monticello House, Inc., a privately owned nursing home, against the county of Calhoun which had leased the Walter Byron Medical Care Facility, Inc.   Monticello sought to enjoin the transfer of patients from its facility to the leased quarters and to enjoin the payment of public moneys, and, further, asked for a declaration that the lease was void.  Byron intervened by leave of the court, and both defendants filed motions for summary and accelerated judgment. Plaintiff filed a cross-motion for summary judgment on the pleadings, which was granted, and judgment entered accordingly.

The intervening defendant, Walter Byron Medical Care Facility, is the owner of a nursing home located in the city of Battle Creek.   As a result of negotiations, Byron agreed to lease a medical care unit to defendant county of Calhoun for the benefit of indigent residents of the county under the "Medicaid" program.   Under the terms of the lease agreement, the county was granted the right of possession and use of the building and equipment for a five year term with renewal options.   Following execution and delivery of the lease, suit was commenced by Monticello House, Inc., which had housed county patients.

The first question with which we are faced is whether a Michigan profit corporation has legal standing as a sole party plaintiff and county taxpayer to bring an action to enjoin enforcement of an allegedly illegal contract of that county where public funds are involved.

It is the contention of both defendants that plaintiff is not a proper party, acting alone, to file an

action of this type. They argue that state funds are involved in the project at least to the extent that the county is reimbursed for the expense of providing such care, and hence, under GCR 1963, 201.2(3), the plaintiff does not have standing to bring this action. The court rule states:

"An action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating thereto may be brought in the name of a domestic non-profit corporation organized for civic, protective, or improvement purposes, or in the names of at least 5 residents of this state who own property assessed for direct taxation by the county wherein they reside."

Plaintiff avers that state funds are not involved since such amounts as are received from the state lose their identity as such when received by the county. They also argue that the county alone is the agency responsible for large capital expenditures of this type, and they are not reimbursed by the state.

Defendants argue that since plaintiff is a domestic corporation organized for profit, and a sole party plaintiff, it is precluded by the court rule from bringing this type of action to prevent the illegal expenditure of state funds.

Defendants cite *Pokorny* v. *County of Wayne* (1948), 322 Mich 10, in support of their contention that state funds are involved, and that public funds are synonymous with state funds. We disagree with this proposition, for the definition of public funds in that case is too general and may or may not specifically include state funds. Furthermore, there is no express obligation on the part of the county to appropriate and to expend public funds for a medical facility of the type involved in the instant case. We have examined the satutes cited by defendants, and, contrary to their assertions, the legis-

lation providing for medical facilities is not of a compulsory nature, but is permissive. MCLA § 400-.58 (Stat Ann 1968 Rev § 16.458) MCLA § 400.58(c) (Stat Ann 1968 Rev § 16.458[3]).

In a project of this nature, admittedly there is some state reimbursement. However, it appears that these funds are actually county moneys. Although there is no Michigan authority on this point, the Ohio case of *State* v. *Lucas* (1949), 39 Ohio Op 519 (85 NE2d 155), holds that state funds appropriated and paid to a county lose their identity as state funds upon being paid to that county. The reasoning expressed in *Lucas* applies to the situation before us:

"Political subdivisions of the state are entitled to a share of many funds collected by the state for express purposes, such as the gasoline fund, auto tax fund, sales tax fund, school fund, and others, all of which by express direction of the law must be used by the counties and other political subdivisions for the purposes provided by statute. It would not be contended that any of such funds, after payment thereof to the political subdivisions, are still state funds, although collected and distributed by the state, although, under the provisions of the various statutes, such funds may only be legally used for specified purposes."

Upon reviewing the facts in the case at bar, which include an absence of any mandatory legislation requiring provision for such a health facility and the absence of complete reimbursement by the state for these facilities, we hold that there did not exist any state funds as contemplated by GCR 1963, 201.2(3) and that plaintiff has legal standing to bring an action to enjoin an allegedly illegal contract. *Thomson* v. *City of Dearborn* (1956), 347 Mich 365.

Defendants' second assignment of error concerns the trial court's ruling that a county, acting through

its board of supervisors, does not have the power to lease a building for the purpose of operating a medical care facility therein. It appears that the parties to the instant action concede the authority of a county, acting through its supervisors, to establish and maintain a medical care facility. The problem manifests itself in a dispute over statutory interpretation and whether such a facility may be leased as opposed to being erected. In its opinion, the trial court ruled that the specific grant of power to erect a medical care facility necessarily excluded a medical facility from the category of county buildings which may be leased.

An examination of the medical care facility act, MCLA § 400.58 (Stat Ann 1968 Rev § 16.458), indicates that such a facility may be located in either an existing building or in a newly erected building. The pertinent portions of the statute read as follows:

"The county social welfare board is hereby authorized with the approval of the board of supervisors, to supervise and be responsible for the operation of a county medical care facility which is now or may hereafter be established within or auxiliary to or independent of the county infirmary.    *    *    *

"The county social welfare board, in seeking approval to establish, extend, and operate a county medical care facility in an existing building, shall make application in writing to the state department submitting therewith its proposed plan with specifications, including standards of operation, for the examination and recommendations of the state department.

"The board of supervisors of any county may determine to erect a county infirmary or county medical care facilities    *    *    *    ."

The enactment regarding an existing building, when considered in light of the general powers granted

to counties found in MCLA § 46.11 (Stat Ann 1969 Cum Supp § 5.331), leads to the conclusion that the county of Calhoun had the authority to lease the facilities in question.

"The said several boards of supervisors shall have power and they are hereby authorized at any meeting lawfully held:

\* \* \*

"Second, To purchase or lease, for a term not to exceed 5 years any real estate necessary for the site of any county court house, jail, clerk's office, *or any other county building in such county.*" (Emphasis supplied.)

Hence, this Court finds that the trial court erred in holding that the statute cited, *supra,* excluded a medical facility from the category of county buildings which may be leased.

The plaintiff argues and the trial court so held that the term "real estate" should be given a narrow interpretation that would include only the lease of land rather than land and buildings thereon. This position is not supported by the generally accepted view found in 73 CJS, Real Property, § 7.a, p 157:

"Generally, the terms 'real property' and 'real estate' embrace lands, tenements, and hereditaments, and all rights and interests therein."

Application of this definition would include the lease of land with an existing structure to be used for a county building.

We therefore hold that a county, through its board of supervisors, may lease a building for purposes of operating a medical facility therein. A thorough review of the applicable statutes demonstrates that such an express power does, in fact, exist.

Affirmed as to the holding that plaintiff is a proper party; reversed as to the county's lack of authority to lease the facility in question.

No costs, a public question being involved.

All concurred.